**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:  (619) 798-2006

**Counsel for Plaintiff**

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN LIOU, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Case No:  **'24CV0102 RSH VET** |
| v. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW** |
| YOUR SIGNATURE SUPPLEMENTS, LLC, | |
| Defendant. | |

# **TABLE OF CONTENTS**

I.     JURISDICTION AND VENUE ................................................................. 1

II.    NATURE OF THE ACTION ................................................................... 1

III.   PARTIES ............................................................................................... 2

IV.    REGULATORY BACKGROUND ........................................................... 2

V.     THE SALE OF UNAPPROVED DRUGS POSES A GRAVE DANGER TO PUBLIC HEALTH. ............................................................................... 4

VI.    YSS MARKETS DAS WITH DECEPTIVE AND UNLAWFUL EFFICACY CLAIMS. ............................................................................. 5

VII.   DAS IS AN UNAPPROVED DRUGS. ................................................... 7

VIII.  DEFENDANT'S ADVERTISING FOR DAS IS FALSE AND MISLEADING, RENDERING THE PRODUCTS MISBRANDED. ..................... 10

IX.    DEFENDANT'S PRACTICES WERE "UNFAIR" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW. ................................... 11

X.     DEFENDANT'S PRACTICES WERE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW. ................. 11

XI.    PLAINTIFF'S PURCHASE OF DAS AND RELATED INJURY ..................... 13

XII.   DELAYED DISCOVERY ....................................................................... 13

XIII.  ADDITIONAL TOLLING ALLEGATIONS ................................................ 14

XIV.   CLASS ACTION ALLEGATIONS ........................................................... 15

PRAYER FOR RELIEF ..................................................................................... 18

NO JURY DEMAND ........................................................................................ 19

Plaintiff Glenn Liou, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues Defendant Your Signature Supplements, LLC ("Defendant" or "YSS") and upon information and belief and investigation of counsel, alleges as follows:

## I.  <u>JURISDICTION AND VENUE</u>

1.  Jurisdiction is proper because Defendant is a citizen of California and because all claims are asserted under the laws of California and relate to a product that is sold by Defendant in California.

2.  Venue is proper under Bus. & Prof. Code § 17203 because YSS conducts continuous business in this District and sold hundreds of the products at issue in this District, and because hundreds of class members, reside in this District and were harmed by the conduct of Defendant in this District.

## II.  <u>NATURE OF THE ACTION</u>

3.  YSS manufactures, markets, and distributes a suite of nutritional supplements, including a "supplement" called Dementia/Alzheimer's Support ("DAS").

4.  YSS markets DAS as product which can purportedly improve cognitive function, reduce symptoms of memory loss, prevent neural damage, and reduce the risk of Alzheimer's disease and dementia.

5.  YSS markets DAS as a product capable of providing benefits akin to those which prescription drugs would provide.

6.  These claims are contrary to those allowed by the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"), and subject any individual manufacturing or selling DAS to liability for the sale of an unapproved new drug.

7.  Defendant's representations mislead consumers into believing that DAS is safe and effective for its intended purposes.

8.  Plaintiff Glenn Liou purchased and used DAS in reliance upon these claims, and with the belief that the product was sold in compliance with state and federal regulations.

9.      Mr. Liou used DAS as directed, but the product failed to deliver the advertised benefits, nor any results at all.

10.     YSS promotes DAS as capable of providing benefits akin to those prescription drugs would provide, when in truth, DAS cannot deliver the advertised benefits.

11.     This action is brought to remedy Defendant's unfair and unlawful conduct. On behalf of the class defined herein, Plaintiff seeks an order compelling YSS to, *inter alia*: (1) cease marketing and selling DAS as an illegal unapproved new drug; (2) conduct a corrective advertising campaign; (3) destroy all unlawful marketing materials and products; (4) award Plaintiff and the Class members restitution; and (5) pay costs, expenses, and attorney fees.

### III.     PARTIES

12.     Defendants Your Signature Supplements, LLC is a Florida corporation with its principal place of business in San Clemente, CA.

13.     During the class period, YSS owned, manufactured, distributed, and sold a suite of unapproved drugs, including Dementia/Alzheimer's Support ("DAS").

14.     YSS sold DAS throughout California and the United States during the Class Period defined herein.

15.     Plaintiff Glenn Liou is a citizen of New Jersey who purchased DAS during the class period for personal consumption.

### IV.     REGULATORY BACKGROUND

16.     The

Dietary Supplement Health and Education Act (DSHEA) of 1994, which amended the Federal Food, Drug, and Cosmetic Act, transformed FDA's authority to regulate dietary supplements. Under DSHEA, FDA is not authorized to approve dietary supplements for safety and effectiveness before they are marketed. In fact, in many cases, firms can lawfully introduce dietary supplements to the market without even notifying FDA. Since DSHEA was enacted, the dietary supplement market has grown significantly. For example, the number of products has expanded nearly

twenty times since 1994.[1]

17.    In a press release issued on February 11, 2019, the FDA stated:

The U.S. Food and Drug Administration today posted 12 warning letters . . .  and 5 online advisory letters . . . issued to foreign and domestic companies that are illegally selling more than 58 products, many that are sold as dietary supplements, which are unapproved new drugs and/or misbranded drugs that claim to prevent, treat or cure Alzheimer's disease and a number of other serious diseases and health conditions. These products, which are often sold on websites and social media platforms, have not been reviewed by the FDA and are not proven safe and effective to treat the diseases and health conditions they claim to treat. These products may be ineffective, unsafe and could prevent a person from seeking an appropriate diagnosis and treatment.[2]

18.    In the same press release, FDA Commissioner Scott Gottlieb, M.D. noted that:

"Science and evidence are the cornerstone of the FDA's review process and are imperative to demonstrating medical benefit, especially when a product is marketed to treat serious and complex diseases like Alzheimer's. **Alzheimer's is a challenging disease that, unfortunately, has no cure. Any products making unproven drug claims could mislead consumers to believe that such therapies exist and keep them from accessing therapies that are known to help support the symptoms of the disease, or worse as some fraudulent treatments can cause serious or even fatal injuries**. Simply put, health fraud scams prey on vulnerable populations, waste money and often delay proper medical care – and we will continue to take action to protect patients and caregivers from misleading, unproven products."

*Id.* (emphasis added).

---

[1] U.S. Food & Drug Admin., <u>Information for Consumers on Using Dietary Supplements</u> (October 21, 2022), available at https://www.fda.gov/food/dietary-supplements/information-consumers-using-dietary-supplements.

[2] U.S. Food & Drug Admin., <u>FDA Takes Action Against 17 Companies for Illegally Selling Products Claiming to Treat Alzheimer's Diseases</u> (February 11, 2019), available at https://www.fda.gov/news-events/press-announcements/fda-takes-action-against-17-companies-illegally-selling-products-claiming-treat-alzheimers-disease.

19.    "The term 'drug' means . . . (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals." 21 U.S.C. § 321(g)(1).

20.    A "new drug" is any drug "not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the condition prescribed, recommended, or suggested in the labeling thereof . . ." 21 U.S.C. § 321(p)(1).

21.    Pursuant to 21 U.S.C § 355(a), "No person shall introduce or deliver for introduction into interstate commerce any new drug . . ." without approval by the FDA.

22.    Further, 21 U.S.C. § 331(a) prohibits the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded."

23.    Pursuant to 21 U.S.C. § 352(f), drugs are required to have adequate instructions for safe use.

## V.    THE SALE OF UNAPPROVED DRUGS POSES A GRAVE DANGER TO PUBLIC HEALTH.

24.    "Unapproved prescription drugs pose significant risks to patients because they have not been reviewed by FDA for safety, effectiveness or quality."[3]

25.    "Without FDA review, there is no way to know if these drugs are safe and effective for their intended use, whether they are manufactured in a way that ensures consistent drug quality or whether their label is complete and accurate." *Id.*

26.    "Unapproved drugs have resulted in patient harm, and the [FDA] works to protect patients from the risks posed by these drugs." *Id.*

---

[3] U.S. Food & Drug Admin., Unapproved Drugs (June 2, 2021), available at https://www.fda.gov/drugs/enforcement-activities-fda/unapproved-drugs.

27.    Further, unapproved drugs lack "labels and prescribing information that has" "been reviewed by FDA for accuracy and completeness."[4]

28.    Consumers using unapproved drugs also run the risk of "unexpected and undocumented safety concerns due to lack of rigorous pre- and postmarket safety surveillance." *Id.*

29.    Additionally, unapproved drugs lead consumers in need of medical treatment to forego medically proven therapies.

## VI.    YSS MARKETS DAS WITH DECEPTIVE AND UNLAWFUL EFFICACY CLAIMS.

30.    Defendant YSS markets DAS with claims which suggest that the product can affect the structure or function of the human body and cure, mitigate, or treat disease.

31.    These claims render the product a "drug."

32.    However, Defendant failed to obtain FDA approval to market and distribute DAS in violation 21 U.S.C. § 355.

33.    During the Class Period, Defendant manufactured, marketed, distributed, and sold Dementia/Alzheimer's Support ("DAS") in packaging bearing claims which suggest the product can mitigate, cure, or treat dementia, Alzheimer's disease, and cognitive decline and which can affect the structure and function of the human body by preventing neuronal damage.

34.    Specifically, the DAS label claims the product is a "synergistic blend of clinically studied herbs" which "combines neurotransmitter precursors, helps get oxygen to the brain, improves cognitive function, nourishes the brain and contains several cholinesterase inhibitors" and that the "blends contain several herbs that inhibit the enzyme that breaks down acetylcholine." Defendants further claim that DAS improves "memory, mood, mental clarity & concentration."

---

[4] U.S. Food & Drug Admin., <u>Unapproved Drugs and Patient Harm</u> (June 2, 2021), https://www.fda.gov/drugs/enforcement-activities-fda/unapproved-drugs-and-patient-harm.





CLASS ACTION COMPLAINT

35.     Further, during the class period YSS advertised DAS with claims that suggest the product can provide benefits akin to those of a prescription drug.

36.     The DAS label and Defendant's website contained the following claims, which show the product is intended to affect the structure and function of the body, and to cure, mitigate, treat, or prevent disease, during the Class Period:

- "Dementia/Alzheimer's Support"
- "Supports Memory, Mood, Mental Clarity & Concentration"
- "This synergistic blends of clinically studied herbs combines neurotransmitter precursors, helps get oxygen to the brain, improves cognitive function, nourishes the brain and contains several cholinesterase inhibitors."
- "Brain Boost IQ"
- "Brain Health"
- "Focus Advantage"
- "shown to reduce symptoms of memory loss" as "well as prevent neuronal damage caused by amyloid-beta plaques, which accumulate in the brain during Alzheimer's disease."

37.     These claims suggest that DAS can decrease memory loss, improve cognitive function and concentration, and prevent dementia and Alzheimer's disease. Further, the claims render DAS a "drug" within the meaning of 21 U.S.C. § 321(g)(1)

38.     A true and correct copy of the Dementia/Alzheimer's Support page from Defendant's website is attached hereto as **Exhibit 1**.

39.     The FDA maintains a database of drugs which it has approved at https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm.

40.     Attached hereto as **Exhibit 2** are search results from this FDA database, showing that the search term "Dementia/Alzheimer's Support" "did not return any results."

41.     Thus, YSS failed to obtain FDA approval prior to marketing, distributing, and selling DAS.

## VII.    **DAS IS AN UNAPPROVED DRUGS.**

42.     The term 'drug' means . . . (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles

7

(other than food) intended to affect the structure or any function of the body of man or other animals." 21 U.S.C. § 321(g)(1).

43.    Here, DAS is an unapproved "drug" for regulatory purposes because it is advertised as a product which will cure, mitigate, treat, or prevent disease such as dementia and Alzheimer's disease and which will affect the structure or function of the body by preventing neuronal damage, inhibiting cholinesterase, decreasing memory loss, and improving cognitive function and concentration.

44.    The claims on the packaging and website of DAS render it an unapproved new drug.

45.    The FDA has determined that the following claims, which are similar to those Defendant makes regarding DAS, constitute "drug claims":

- "Rich in medicinal properties, Lion's Mane mushrooms are thought to guard against dementia" (**Exhibit 3**, FDA Warning Letter to Lone Star Botanicals);

- "eliminate dementia and Alzheimer's disease" (**Exhibit 4**, FDA Warning Letter to Hekma Center, LLC);

- "Lion's Mane May Be Effective in Combating Dementia/Alzheimer's Disease" (**Exhibit 5**, FDA Warning Letter to Brilliant Enterprises, LLC)

- "Reduces Risk for Dementia/Alzheimer's" (**Exhibit 6**, FDA Warning Letter to Spartan Enterprises, Inc.);

- "6 grams (2 tsp or 12 capsules) per day if you have memory issues or DEMENTIA" (**Exhibit 6**);

- "Magnesium repairs the damaged synapses of the brain" (**Exhibit 6**)

- "Decreases the Onset Of Memory Loss" (**Exhibit 6**);

- "Repairs Damaged Synapses" (**Exhibit 6**);

- "Reduces Symptoms of Psychiatric Disorders and Dementia" (**Exhibit 7**, FDA Warning to Moorish Science Temple)

- "Improves memory and mood in Alzheimer's patients" (**Exhibit 7**)

- "Ginko Biloba has been repeatedly evaluated for its ability to reduce anxiety, stress and other symptoms associated with Alzheimer's disease" (**Exhibit 7**)

46.    A "new drug" is any drug "not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as

safe and effective for use under the condition prescribed, recommended, or suggested in the labeling thereof . . . ." 21 U.S.C. § 321(p)(1). Here, DAS is a "new drug" within the meaning of the FDCA because it is not generally recognized as safe and effective for its intended use. *See* Title 21 of the Code of Federal Regulations, Chapter I, Subchapter D; 21 C.F.R. § 330.1.

47. "No person shall introduce or deliver for introduction into interstate commerce any new drug . . ." without approval by the FDA. 21 U.S.C § 355(a); *see also* 21 U.S.C. § 331(d).

48. Defendant has not received approval from the FDA to sell DAS.

49. The sale of unapproved new drugs is illegal and dangerous. First, consumers risk purchasing and using a product that will endanger their health. Second, consumers risk purchasing a product that will not effectively treat their condition, forgoing actual treatment of that condition in lieu of an unapproved new drug which may not treat their condition. The FDA's regulatory regimen helps ensure that such products are kept away from consumers.

50. Defendant's failure to comply with these regulations puts consumers at risk and gives Defendant an unfair advantage over competitors that do commit the time and expense of complying with such necessary regulations.

51. DAS does not qualify for the reduced level of regulation applicable to certain nutrition supplement products for several reasons. The challenged marketing materials neither describe the role of any nutrient or dietary ingredient intended to affect the structure or function in humans, characterize the documented mechanism by which any nutrient or dietary ingredient acts to maintain such structure or function, nor describe general well-being from consumption of any nutrient or dietary ingredient. 21 U.S.C. § 343(r)(6)(A).

52. California similarly prohibits the sale of unapproved new drugs. Cal. Health & Saf. Code § 111550.

CLASS ACTION COMPLAINT

## VIII.  **DEFENDANT'S ADVERTISING FOR DAS IS FALSE AND MISLEADING, RENDERING THE PRODUCTS MISBRANDED.**

53.    It is unlawful to manufacture or sell any drug that is misbranded. 21 U.S.C. § 331(a), (b), (c), & (g).

54.    A drug is misbranded "[i]f its labeling is false or misleading in any particular."[5] 21 U.S.C. § 352(a)(1).

If an article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the articles to which the labeling or advertising relates under the conditions of use prescribed in the labeling or advertising thereof or under such conditions of use as are customary or usual.

21 U.S.C.S. § 321(n).

55.    Defendant's deceptive efficacy representations regarding DAS described herein render the product misbranded pursuant to Cal. Health & Saf. Code § 110100 (adopting all FDA labeling regulations as state regulations), § 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded."), § 111330 (drug label misbranded if false or misleading in any particular), and further violate Cal. Bus. & Prof. Code § 17200 (Unfair Competition Law "Fraudulent" Prong) § 17500 (False Advertising Law) and Cal. Civ. Code § 1750 (CLRA).

56.    Because DAS claims to treat conditions not amenable to self-diagnosis, directions are not and likely cannot be written such that a layperson can safely use this product to treat those conditions. The label of DAS therefore lacks "adequate directions for

---

[5] Under the FDCA, "'labeling' means all labels and other written, printed, or graphic matters (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m). This includes websites associated with the products." See *Sandoval v. Pharmacare US, Inc.*, 730 Fed. App'x 417, 420 (9th Cir.  2018).

use," rendering the product misbranded. 21 U.S.C. § 352(f)(1); *see also* 21 C.F.R. § 201.5 ("'Adequate directions for use' means directions under which the layman can use a drug safely and for the purposes for which it is intended.").

57.     Plaintiff used DAS, as directed, but it failed to deliver the advertised benefits.

## IX.     DEFENDANT'S PRACTICES WERE "UNFAIR" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW.

58.     Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because YSS's conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers, and the utility of this conduct to Defendant does not outweigh the gravity of the harm to Defendant's victims.

59.     In particular, while Defendant's marketing of DAS with "drug" claims as defined by 21 U.S.C. § 321(g) and absent FDA approval to do so allowed YSS to realize higher profit margins than if it did not use unlawful marketing tactics, this utility is small and far outweighed by the gravity of the economic harm and potential physical harm Defendant inflicts upon consumers. Further, the injury to consumers from Defendant's practices is substantial, not outweighed by benefits to consumers or competition, and not an injury that consumers themselves could reasonably have avoided.

## X.     DEFENDANT'S PRACTICES WERE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW.

60.     Defendant's practices as described herein are "unlawful" within the meaning of the California Unfair Competition Law because the marketing, sale, and distribution of DAS violates the Federal Food, Drug, and Cosmetic Act, as well as California's Sherman Food, Drug, and Cosmetic Law.

61.     Defendant's conduct described herein is "unlawful" because it violated the following portions of the Federal Food, Drug, and Cosmetic Act ("FDCA"):

- **21 U.S.C. § 331(a)**, prohibiting the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded";

- **21 U.S.C. § 331(b)**, prohibiting the "adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce";

- **21 U.S.C. § 352(f)(1)**, requiring drugs to have adequate directions for use

- **21 U.S.C. § 355(a)**, prohibiting the sale of unapproved new drugs.

62.   Defendant's conduct described herein also violates multiple provisions of California law including, *inter alia*:

- **Cal. Health & Saf. Code § 110100 *et seq.***, which adopts all FDA labeling regulations as state regulations;

- **Cal. Health & Saf. Code § 111330**, "Any drug or device is misbranded if its labeling is false or misleading in any particular.";

- **Cal. Health & Saf. Code § 110398**, "It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.";

- **Cal. Health & Saf. Code § 111440**, "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any drug or device that is misbranded.";

- **Cal. Health & Saf. Code § 111445**, "It is unlawful for any person to misbrand any drug or device.";

- **Cal. Health & Saf. Code § 111450**, "It is unlawful for any person to receive in commerce any drug or device that is misbranded or to deliver or proffer for delivery any drug or device.";

- **Cal. Health & Saf. Code § 111550**, prohibiting sale of new drug unless approved under 21 U.S.C. § 355.

63.   YSS's unlawful marketing and advertising of DAS constitute violations of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

64.   Defendant's unlawful acts allowed it to sell more units of DAS, than it would have otherwise, and at a higher price and higher margin.

65.    In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

66.   Plaintiff also seeks an order for the disgorgement and restitution of all revenue received by Defendants from the sale of DAS.

## XI.    PLAINTIFF'S PURCHASE OF DAS AND RELATED INJURY

67.    Plaintiff Glenn Liou purchased DAS from Defendant's website, www.yoursignaturesupplements.com, on March 13, 2023.

68.    When Liou purchased DAS, he was seeking a safe and effective product which would improve cognitive performance, decrease memory loss, and prevent dementia and Alzheimer's disease, and which was sold in compliance with FDA regulations and California law.

69.    Liou purchased DAS believing it had the qualities he sought based on the product's labeling and website and the natural assumption that products sold in stores and online by supplement manufacturers and distributors would be sold in compliance with FDA regulations and California law.

70.    Plaintiff purchased DAS instead of competing products based on Defendant's unlawful conduct described herein.

71.    Plaintiff suffered economic injury when he purchased DAS because it was not safe and effective and because it was sold in violation of FDA regulations and California law.

72.    Plaintiff would not have purchased DAS had he known that that product was ineffective and sold in violation of federal and California law.

73.    DAS was offered for sale in violation of California and federal law and has a value of $0 because it is both illegal and ineffective.

74.    Plaintiff would consider purchasing DAS in the future if he could be assured that the product is (1) safe and effective and (2) sold in compliance with all FDA regulations and California law.

## XII.    DELAYED DISCOVERY

75.    Plaintiff did not discover that Defendant's behavior was unfair and unlawful until January 2024, when he learned that YSS had been selling DAS in violation of federal and California law for years. Until this time, he lacked the knowledge regarding the facts of his claims against YSS.

76. Plaintiff is a reasonably diligent consumer who exercised reasonable diligence in his purchase, use, and consumption of DAS. Nevertheless, he would not have been able to discover Defendant's unfair and unlawful practices and lacked the means to discover them given that, like nearly all consumers, he is not an expert on FDA regulations or California law pertaining to the marketing of drugs.

## XIII.   ADDITIONAL TOLLING ALLEGATIONS

77. At all relevant times, YSS was aware that its marketing of DAS violated FDA regulations and California law.

78. As a supplement producer and distributor, Defendant had a continuing and affirmative moral and legal obligation to refrain from marketing and selling supplements with claims that violate FDA regulations and California law.

79. Class members had no duty and no reason to inquire as to whether DAS was marketed in violation of state and federal law. California, as a matter of economic regulation, places the burden of ensuring that supplements are safe, effective, and sold in compliance with FDA regulations and California law, on their manufacturers, not the general public.

80. Reasonable consumers, including Plaintiff, had no reason to suspect YSS's unfair competition and violations of federal and state law prohibiting the sale of unapproved and misbranded drugs.

81. YSS owed a special duty to Plaintiff and all Class Members, akin to a fiduciary duty, which it violated by marketing DAS with claims that suggest the product can affect the structure or function of the human body or can treat, mitigate, or cure disease without obtaining FDA approval to do so. During the entire Class Period, YSS was aware that its conduct was oppressive and cruel, causing economic injury and discouraging consumers from seeking medically proven treatments, yet consciously continued these acts for years while knowing the extent of the harm it was causing. Equity and the public policy of California, embodied in its statutes, jointly demand, in such circumstance, that laches and tolling cannot apply in such a way to permit Defendant to continue to enjoy the fruits of its

intentional, cruel, oppressive, and unlawful acts.

## XIV.    CLASS ACTION ALLEGATIONS

82.    Plaintiff brings this action on behalf of himself, and all others similarly situated (the "Class"), excluding Defendant's officers, directors, and employees, and the Court, its officers and their families. The Class is defined as:

> All individuals who purchased Dementia/Alzheimer's Support in the United States for their own personal or household use, and not for resale, from January 1, 2015 to the present.

83.    Questions of law and fact common to Plaintiff and the Class include:

a.    Whether Defendant's conduct constituted a violation of the unfair prong of California's Unfair Competition Law;

b.    Whether Defendant's conduct constituted a violation of the unlawful prong of California's Unfair Competition Law;

c.    Whether Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers;

d.    Whether the slight utility Defendant realized as a result of its conduct outweighs the gravity of the harm the conduct caused to its victims;

e.    Whether Defendant's conduct violated public policy as declared by specific constitutional, statutory, or regulatory provisions;

f.    Whether the injury to consumers from Defendant's practices is substantial;

g.    Whether the injury to consumers from Defendant's practices is outweighed by benefits to consumers or competition;

h.    Whether Class members are entitled to restitution;

i.    Whether Class members are entitled to an injunction and, if so, its terms; and

j.    Whether Class members are entitled to any further relief.

84.    By purchasing DAS, all Class members were subjected to the same wrongful conduct.

85.    Plaintiff's claims are typical of the Class's claims because all Class members

15

were subjected to the same economic harm when they purchased DAS and suffered economic injury.

86.    Plaintiff will fairly and adequately protect the interests of the Class, has no interests that are incompatible with the interests of the Class, and has retained counsel competent and experienced in class litigation.

87.    The Class is sufficiently numerous, as it includes thousands of individuals who purchased DAS in the United States during the Class Period.

88.    Class representation is superior to other options for the resolution of the controversy. The relief sought for each Class member is small, as little as $15 for some Class members. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

89.    Questions of law and fact common to the Class predominate over any questions affecting only individual members.

## CAUSES OF ACTION

### First Cause of Action

**Unfair Competition Law, Unfair Prong**

**Cal. Bus. & Prof. Code §§ 17200 *et seq.***

90.    In both causes of action, Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in the Complaint, as if fully set forth herein.

91.    The business practices and omissions of Defendants as alleged herein constitute "unfair" business acts and practices in that Defendant's conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to Defendant's victims.

92.    Further, Defendant's practices were unfair because they violated public policy as declared by specific constitutional, statutory, or regulatory provisions, including those embodied in the FDCA and the California Health and Safety Code.

93.    Moreover, Defendant's practices were unfair because the injury to consumers from Defendant's practices was substantial, not outweighed by benefits to consumers or

competition, and not one that consumers themselves could reasonably have avoided or should be obligated to avoid.

## Second Cause of Action

### Unfair Competition Law, Unlawful Prong

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

94.    Defendant has made and distributed, in interstate commerce and in this state, products that were marketed with unlawful "drug claims" without obtaining FDA approval to do so.

95.    Defendant's conduct violated the following portions of the Federal Food, Drug, and Cosmetic Act ("FDCA"):

- **21 U.S.C. § 331(a)**, prohibiting the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded";

- **21 U.S.C. § 331(b)**, prohibiting the "adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce";

- **21 U.S.C. § 352(f)(1)**, requiring drugs to have adequate directions for use;

- **21 U.S.C. § 355(a)**, prohibiting the sale of unapproved new drugs; and

96.    Defendants' conduct also violates other provisions of California law including, *inter alia:*

- **Cal. Health & Saf. Code § 110100 *et seq.***, which adopts all FDA regulations as state regulations;

- **Cal. Health & Saf. Code § 111330**, "Any drug or device is misbranded if its labeling is false or misleading in any particular.";

- **Cal. Health & Saf. Code § 110398**, "It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.";

- **Cal. Health & Saf. Code § 111440**, "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any drug or device that is misbranded.";

- **Cal. Health & Saf. Code § 111445**, "It is unlawful for any person to misbrand any drug or device.";

- **Cal. Health & Saf. Code § 111450**, "It is unlawful for any person to receive in commerce any drug or device that is misbranded or to deliver or proffer for delivery any drug or device.";

- **Cal. Health & Saf. Code § 111550**, prohibiting sale of new drug unless approved under 21 U.S.C. § 355.

97.     The challenged labeling and website statements made by Defendant thus constitute violations of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

98.     Defendant employed unlawful marketing tactics to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised and which were not safe and effective, or FDA approved.

99.     The marketing and sale of DAS described herein constitute violations of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

100.    Had Plaintiff known that DAS was offered for sale in violation of California and federal regulations, he would not have purchased it.

101.    Had class members known that DAS was offered for sale in violation of California and federal regulations, they would not have purchased it.

102.    Plaintiff suffered injury in fact and lost money or property as a result of Defendant's unlawful conduct: he was denied the benefit of the bargain when he decided to purchase DAS over competing products, which are legal, less expensive, and do not make drug claims on their packaging and web properties.

103.    Defendants' unlawful acts allowed it to sell more units of DAS than it would have otherwise, and at a higher price, and higher margin.

104.    Had Plaintiff been aware of Defendant's unlawful marketing tactics, he would not have purchased DAS, and had Defendant not advertised DAS in an unlawful manner, Plaintiff would have paid less for it.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Your Signature Supplements, LLC as follows:

A.      An order confirming that this class action is properly maintainable as a class action as defined above, appointing Plaintiff and his undersigned counsel to represent the Class, and requiring YSS to bear the cost of class notice;

B.    An award of restitution of $10 million;

C.    An order requiring YSS to conduct a corrective advertising campaign;

D.    Declaratory relief that the conduct alleged herein is unlawful;

E.    Pre-judgment, and post-judgment interest; and

F.    An award of attorney fees and costs.

## **NO JURY DEMAND**

Plaintiff makes no jury demand.

DATED: January 16, 2024                    Respectfully Submitted,


**THE WESTON FIRM**
GREGORY S. WESTON


**Counsel for Plaintiff Glenn Liou**

CLASS ACTION COMPLAINT

# EXHIBIT 1



Your Signature Supplements

Free Standard Shipping Over $20!

Sign in **or** Create an Account

Search all products...

[ CART

HOME     SHOP     ABOUT     FAQ'S     CONTACT     ORDERS

Home  ›  Brain Health - Dementia Support  ›  Dementia Alzheimers Support - 100 C...





### Dementia Alzheimers Support - 100 Capsules

$14⁹⁹

Quantity

- 1 +

[ ADD TO CART

Buy with Shop Pay

More payment options

DEMENTIA/ALZHEIMER'S SUPPORT: This synergetic blend of clinically studied herbs combines neurotransmitter precursors, helps get oxygen to the brain, improves cognitive function, nourishes the brain and contains several cholinesterase inhibitors.

When key neurotransmitters, such as acetylcholine, are low our brain suffers. This blend contains several herbs that inhibit the enzyme that breaks down acetylcholine. *

Bacopa (Bacopa monnieri)
Huperzine A (Huperzia serrata)
Gotu Kola (Centella asiatica)
Fo Ti (Polygonum multiflorum)
Spirulina
Acetyl-l-carnitine
Horsetail (Equisetum arvense)
Sage (Salvia Officinalis)
DMAE
L-Tyrosine
Vinocepine (Vinca minor)
Choline Bitartrate

 Share     Tweet    Pin it

## We Also Recommend

                

Brain Health - 100 Capsules

$13⁹⁹

Omega 3-6-9 - 100 Capsules

$11⁹⁹

Lyme Support - 100 Capsules

$12⁹⁹

Spirulina - 100 Capsules

$8⁹⁹

N.O. Boost

$10⁹⁹

### Policies

Shipping Policy
Refund Policy
Privacy Policy
Terms of Service

### Information

About Us
Contact Us



# EXHIBIT 2



U.S. FOOD & DRUG
ADMINISTRATION

🔍 Search    ☰ Menu

 Home  /  Drug Databases  /  Drugs@FDA

# Drugs@FDA: FDA-Approved Drugs

👍 Share    🐦 Tweet    in LinkedIn    ✉ Email    🖨 Print

**Home** | Previous Page

Modify Your Search

## Your Drugs@FDA Search Did Not Return Any Results

Your search may not have returned results because of one of these reasons (see FAQ for more search strategies to find approved drugs in Drugs@FDA):

- Drugs@FDA includes the drug you are looking for, but the drug's name was *not spelled correctly*. For your next search:
  - If you are not sure of the spelling of the drug name, use Browse by Drug Name on the Drugs@FDA home page to find drug names in alphabetical order.
  - If applicable, ensure that you include special characters or spaces that reside within the drug name in your search. For example, if you are searching for "H.P. ACTHAR GEL" or "X-TROZINE L.A." include the periods and/or the hyphen.
  - If you know part of the spelling of the drug name, include at least three characters from the drug name in the search box.

- Drugs@FDA does **not** include the drug you searched for because the drug:
  - Does not require FDA approval to be sold in the United States (Drugs@FDA only includes approved drugs). For example:
  - Over-the-counter (OTC) drugs marketed under the monograph system (See OTC Drug Monograph Process for more information.)
  - Dietary supplements (See Dietary Supplements for more information.)
  - Is approved by FDA's Center for Biologics Evaluation and Research. These FDA-approved drugs are not included in Drugs@FDA. These drugs include vaccines, allergenic products, blood and blood products, plasma derivatives, cellular and gene therapy products, plasma volume expanders, and platelet additive solutions. (See CBER's approved drugs.)
  - Is not marketed in the United States (for example, investigational drugs).
  - Is not for human use (for example, animal prescription and animal OTC drugs). (Drugs@FDA does not include animal drugs; for animal drugs see Animal Drugs@FDA.)

- Your Application Number search did **not** include the appropriate number of digits for the application.

   

| | | |
|---|---|---|
| FDA Archive | Visitor Information | FOIA |
| About FDA | Website Policies / Privacy | HHS.gov |
| Accessibility | No FEAR Act | USA.gov |
| | Vulnerability Disclosure Policy | |

Contact FDA   f  🐦  ▶  📡        📞 1-888-INFO-FDA (1-888-463-6332)

# EXHIBIT 3

WARNING LETTER

# Lone Star Botanicals Inc.

**MARCS-CMS 659735 – NOVEMBER 06, 2023**

---

**Delivery Method:**

UPS Overnight

**Product:**

Drugs

Food & Beverages

---

**Recipient:**

Tommy W. Kerzee

Owner

Lone Star Botanicals Inc.

2001 Broussard St.

Tyler, TX 75701-8406

United States

**Issuing Office:**

Division of Human and Animal Food Operations East III

United States

United States

---

November 6, 2023

CMS 659735

**WARNING LETTER**

Dear Tommy Kerzee:

The United States Food and Drug Administration (FDA) inspected your food manufacturing facility, located at 2001 Broussard St., Tyler TX 75701 on April 17-21, 2023. Your firm manufactures and repackages, among other food products, ready-to-eat (RTE) seasoning blends. During the inspection, the FDA investigator found serious violations of the Current Good Manufacturing Practice, Hazard Analysis, and Risk-Based Preventative Controls for Human Food regulation (CGMP & PC rule), Title 21, Code of Federal Regulations, Part 117 (21 CFR Part 117). At the conclusion of the inspection, FDA issued a Form FDA 483 (FDA- 483), Inspectional Observations, listing the

deviations found at your firm. Based on FDA's inspectional findings, we have determined that the ready-to-eat (RTE) seasoning products manufactured in your facility are adulterated within the meaning of section 402(a)(4) of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. § 342(a)(4)] in that they were prepared, packed, or held under insanitary conditions whereby they may have become contaminated with filth or rendered injurious to health. In addition, failure of the owner, operator, or agent in charge of a covered facility to comply with the Preventive Controls provisions of the CGMP & PC rule (located in Subparts A, C, D, E, F, and G of Part 117) is prohibited by section 301(uu) of the Act [21 U.S.C. § 331(uu)]. Further, we found significant violations of the labeling regulations for foods, 21 CFR Part 101. These violations cause  your seasoning blends and Dr. Botanical Health products to be misbranded within the meaning of section 403 of the Act (21 U.S.C. § 343).

FDA also reviewed your product labels, product brochure, and website at the Internet address https://drbotanicalhealth.com/. The claims on your product labels, product brochure, and your website establish that certain of your products are drugs under section 201(g)(1)(B) of the Act [21 U.S.C. 321(g)(1)(B)] because they are intended for use in the cure, mitigation, treatment, or prevention of disease. As explained further below, introducing or delivering these products for introduction into interstate commerce for such uses violates the Act. You can find the Act and FDA regulations through links on FDA's home page at www.fda.gov.

On May 3, 2023, FDA received your written response to the Form FDA 483, describing corrective actions taken and planned by your firm. After reviewing the inspectional findings, response that your firm provided, product labeling collected during the inspection, and your website, we are issuing this letter to notify you of FDA's concerns and provide detailed information describing our findings. We also address your response below.

## Unapproved New Drugs and Misbranded Drugs

FDA reviewed your website at the Internet address https://drbotanicalhealth.com/ in July 2023 and October 2023, and has determined that you take orders there for your Dr. Botanicals Health products Organic Ashwagandha Plant Based Superfood Powder, Organic Elderberry Plant Based Superfood Powder, Organic Lion's Mane Mushroom Based Superfood Powder, Marine Collagen, Organic Cordyceps Mushroom Based Superfood Powder, Organic Acai Plant Based Superfood Powder, Organic Inulin Prebiotic Fiber Superfood Powder, Organic Chaga Mushroom Based Superfood Powder, Organic Maca Plant Based Superfood Powder, Organic Reishi Mushroom Based Superfood Powder, and Organic Rhodiola Rosea Plant Based Superfood Powder. In addition, FDA reviewed your product labels collected during the inspection for your Dr. Botanical Health products Organic Ashwagandha Plant Based Superfood Powder, Organic Elderberry Plant Based Superfood Powder, Organic Lion's Mane Mushroom Based Superfood Powder, and Organic Cordyceps Mushroom Based Superfood Powder, as well as your Dr. Botanical Health Product Brochure, which directs consumers to your website https://drbotanicalhealth.com/ to purchase your products. The claims on your website, product labels, and product brochure establish that the products are drugs under section 201(g)(1)(B) of the Act [21 U.S.C. 321(g)(1)(B)] because they are intended for use in the cure, mitigation, treatment, or prevention of disease. As explained further below, introducing or delivering these products for introduction into interstate commerce for such uses violates the Act.

Examples of some of the website claims that provide evidence that your products are intended for use as drugs include:

- Dr. Botanical Health Organic Ashwagandha Plant Based Superfood Powder

o "Anti-inflammatory"
o "It's known to help reduce anxiety ...."
o "It...reduces anxiety and depression ...."

o "Ashwagandha powder can help reduce inflammation ...."

- Dr. Botanical Health Organic Elderberry Plant Based Superfood Powder

o "Helps Fight Colds & the Flu"

o "It's often used as a folk remedy for...the common cold and flu ... helping allergies and sinus infections, treating diarrhea ...."

o "It also has anti-inflammatory properties, which makes it useful for treating allergies and sinus infections ... scientifically proven to be effective at treating colds and flu, particularly at the onset of a cold or flu."

o "Various studies have shown that it can be effective as a natural remedy for preventing and treating colds and flu ... Not only can elderberry help prevent colds and flu, but it can also be used to treat allergies, including hay fever, and sinus infections. It's thought to be particularly effective against allergies and sinus infections ...."

- Dr. Botanical Health Organic Lion's Mane Mushroom Based Superfood Powder

o From the list of hyperlinked "Tags" on the product page:
- 🔊 "anxiety"
- 🔊 "depression"

o "Rich in medicinal properties, Lion's Mane mushrooms are thought to guard against dementia, reduce mild depression and anxiety, and help speed up recovery from injuries to the nervous system. Our extract powder can also help to regulate diabetes ...."

o "The lions mane mushroom contains a variety of compounds... [that] have anti-inflammatory, anti-cancer... properties."

o "Lion's mane mushrooms have been used medicinally for...skin diseases...reduce inflammation.... They are also used to help treat skin conditions such as psoriasis and eczema, as well as mental health conditions such as depression and anxiety."

- Dr. Botanical Health Marine Collagen

o "Stabilizes blood sugar"

o "Reduces inflammation"

o "This powerful supplement is proven to stabilize blood sugar...reduce inflammation...."

o "[I]t can...reduce inflammation...."

- Dr. Botanical Health Organic Cordyceps Mushroom Based Superfood Powder

o From the list of hyperlinked "Tags" on the product page:
- 🔊 "anti-inflammatory"

Examples of some of the claims on your product labels that provide evidence that your products are intended for use as drugs include:

- Dr. Botanical Health Organic Ashwagandha Plant Based Superfood Powder

o "Contains Anti-Tumor Properties"

o "Anti-Inflammatory"

- Dr. Botanical Health Organic Elderberry Plant Based Superfood Powder

o "Contains Ant-Inflammatory Properties"

o "Helps Fight Infections Like Cold & Flu"

o "Fights Harmful Bacteria"

- • Dr. Botanical Health Organic Lion's Mane Mushroom Based Superfood Powder

o "Helps Combats [sic] Depression, Anxiety & Stress"
o "Anti-Inflammatory"

- • Dr. Botanical Health Organic Cordyceps Mushroom Based Superfood Powder

o "Anti-Inflammatory"

Examples of some of the claims on your Dr. Botanical Health Product Brochure that provide evidence that your products are intended for use as drugs include:

- • Dr. Botanical Health Organic Ashwagandha Plant Based Superfood Powder

o "Ashwagandha. ...reduces anxiety and depression ...."

- • Dr. Botanical Health Organic Elderberry Plant Based Superfood Powder

o "The phytochemicals found in elderberries are known to fight infection, particularly in the respiratory system. High in antioxidants, it lowers cholesterol ...."

- • Dr. Botanical Health Organic Lion's Mane Mushroom Based Superfood Powder

o "Medicinally, Lion's Mane mushrooms are thought to protect from dementia, reducing mild depression and anxiety, and increase recovery from nervous system injuries."

- • Dr. Botanical Health Marine Collagen

o "Marine Collagen is a powerful supplement proven to...reduce inflammation...."

- • Dr. Botanical Health Organic Cordyceps Mushroom Based Superfood Powder

o "The benefits of this adaptogen also extends to fighting inflammation."

- • Dr. Botanical Health Organic Acai Plant Based Superfood Powder

o "Acai also helps lower cholesterol levels ...."

- • Dr. Botanical Health Organic Inulin Prebiotic Fiber Superfood Powder

o "It is known for aiding in...constipation, diarrhea, and diabetes!"

- • Dr. Botanical Health Organic Chaga Mushroom Based Superfood Powder

o "The health benefits of these mushrooms...include...lowering cholesterol, blood sugar and blood pressure...and fight unhealthy inflammation."

- • Dr. Botanical Health Organic Maca Plant Based Superfood Powder

o "Maca may also help...lower blood pressure ...."

- • Dr. Botanical Health Organic Reishi Mushroom Based Superfood Powder

o "[T]hese mushrooms lower cholesterol, reduce allergic reactions ...."

• Dr. Botanical Health Organic Rhodiola Rosea Plant Based Superfood Powder

o "[T]his herb has been traditionally used to reduce anxiety, depression ...."

Your Dr. Botanical Health Organic Ashwagandha Plant Based Superfood Powder, Organic Elderberry Plant Based Superfood Powder, Organic Lion's Mane Mushroom Based Superfood Powder, Marine Collagen, Organic Cordyceps Mushroom Based Superfood Powder, Organic Acai Plant Based Superfood Powder, Organic Inulin Prebiotic Fiber Superfood Powder, Organic Chaga Mushroom Based Superfood Powder, Organic Maca Plant Based Superfood Powder, Organic Reishi Mushroom Based Superfood Powder, and Organic Rhodiola Rosea Plant Based Superfood Powder products are not generally recognized as safe and effective for the above referenced uses and, therefore, the products are "new drugs" under section 201(p) of the Act [21 U.S.C. 321(p)]. With certain exceptions not applicable here, new drugs may not be legally introduced or delivered for introduction into interstate commerce without prior approval from FDA, as described in sections 301(d) and 505(a) of the Act [21 U.S.C. 331(d), 355(a)]. FDA approves a new drug on the basis of scientific data and information demonstrating that the drug is safe and effective.

A drug is misbranded under section 502(f)(1) of the Act [21 U.S.C. 352(f)(1)] if the drug fails to bear adequate directions for its intended use(s). "Adequate directions for use" means directions under which a layperson can use a drug safely and for the purposes for which it is intended (21 CFR 201.5). Prescription drugs, as defined in section 503(b)(1)(A) of the Act [21 U.S.C. 353(b)(1)(A)], can only be safely used at the direction, and under the supervision, of a licensed practitioner.

Your Dr. Botanical Health Organic Ashwagandha Plant Based Superfood Powder, Organic Elderberry Plant Based Superfood Powder, Organic Lion's Mane Mushroom Based Superfood Powder, Marine Collagen, Organic Acai Plant Based Superfood Powder, Organic Inulin Prebiotic Fiber Superfood Powder, Organic Chaga Mushroom Based Superfood Powder, Organic Maca Plant Based Superfood Powder, Organic Reishi Mushroom Based Superfood Powder, and Organic Rhodiola Rosea Plant Based Superfood Powder products are intended for treatment of one or more diseases that are not amenable to self-diagnosis or treatment without the supervision of a licensed practitioner. Therefore, it is impossible to write adequate directions for a layperson to use your products safely for their intended purposes. Accordingly, your Dr. Botanical Health Organic Ashwagandha Plant Based Superfood Powder, Organic Elderberry Plant Based Superfood Powder, Organic Lion's Mane Mushroom Based Superfood Powder, Marine Collagen, Organic Acai Plant Based Superfood Powder, Organic Inulin Prebiotic Fiber Superfood Powder, Organic Chaga Mushroom Based Superfood Powder, Organic Maca Plant Based Superfood Powder, Organic Reishi Mushroom Based Superfood Powder, and Organic Rhodiola Rosea Plant Based Superfood Powder products fail to bear adequate directions for their intended use and, therefore, the products are misbranded under section 502(f)(1) of the Act [21 U.S.C. 352(f)(1)]. The introduction or delivery for introduction into interstate commerce of these misbranded drugs violates section 301(a) of the Act [21 U.S.C. 331(a)].

### **Hazard Analysis and Risk-Based Preventive Controls (21 CFR Part 117, Subpart C):**

1. You did not prepare, or have prepared, and implement a food safety plan, as required by 21 CFR § 117.126(a)(1). The preparation of the food safety plan must be overseen by one or more preventive controls qualified individuals (PCQIs), as required by 21 CFR § 117.126(a)(2). Your food safety plan must also include the following:

1) The written hazard analysis, as required by 21 CFR § 117.130(a)(2);
2) The written preventive controls, as required by 21 CFR § 117.135(b);
3) The written supply-chain program, as required by Subpart G;
4) The written recall plan, as required by 21 CFR § 117.139(a);

5) The written procedures for monitoring the implementation of the preventive controls, as required by 21 CFR § 117.145(a);

6) The written corrective action procedures, as required by 21 CFR § 117.150(a)(1); and

7) The written verification procedures, as required by 21 CFR § 117.165(b).

However, you did not have a food safety plan with any of the required elements. For example, you did not conduct a hazard analysis to identify and evaluate known or reasonably foreseeable hazards for each type of food manufactured, processed, packed, or held at your facility to determine whether there are any hazards requiring a preventive control (see 21 CFR § 117.130(a)). Also, you did not identify and implement preventive controls to provide assurances that any hazards requiring a preventive control will be significantly minimized or prevented and the food manufactured, processed, packed, or held by your facility will not be adulterated under Section 402 of the Act or misbranded under Section 403(w) of the Act (see 21 CFR § 117.135(a)(1)). Preventive controls include, as appropriate to the facility and the food, process controls, food allergen controls, sanitation controls, supply-chain controls, and a recall plan (see 21 CFR § 117.135(c)). Preventive controls are subject to preventive control management components (monitoring, verification, and corrective actions) as appropriate to ensure the effectiveness of the preventive controls, taking into account the nature of the preventive control and its role in the facility's food safety system (see 21 CFR § 117.140). You must also validate that the preventive controls are adequate to control the hazard as appropriate to the nature of the preventive control and its role in the facility's food safety system (see 21 CFR § 117.160). Specifically:

a. You did not identify and evaluate allergens as a known or reasonably foreseeable hazard to determine whether allergens are a hazard requiring a preventive control. Your facility manufactures RTE seasoning products that contain allergens (such as milk) which are processed using the same utensils on the same production day as products that do not contain milk. Therefore, allergens are a known or reasonably foreseeable hazard. A knowledgeable person manufacturing/processing food in your circumstances would identify allergens as a hazard requiring a preventive control. Food allergen controls include procedures, practices, and processes employed for ensuring protection of food from allergen cross-contact (including during storage, handling, and use) and for labeling to ensure that all food allergens required to be stated are included on the label (see 21 CFR § 117.135(c)(2)).

You do not have controls in place for allergen cross-contact or perform and document the review of labels for proper declaration of allergens. For example, you do not identify ingredients used in the seasonings that contain allergens to prevent allergen cross-contact during manufacturing. The John Paine's Steak Beast Unleashed All Purpose Rub, Net. Wt. 12oz. bears a label that contains an allergen statement that reads in part: "***Contains Dairy.***"; however, the ingredient list for this product did not include butter powder as an ingredient, which contains a major allergen, milk.

b. For your RTE seasoning products, you did not identify and evaluate contamination with environmental pathogens, such as *Salmonella*, as a known or reasonably foreseeable hazard to determine whether it is hazard requiring a preventive control, to comply with 21 CFR § 117.130(c)(1)(ii). Your facility manufactures RTE seasoning products which are exposed to the environment during blending and filling. The packaged food does not receive any further lethal treatment or otherwise include a control measure (such as a formulation lethal to the pathogen) that would significantly minimize the pathogen. A knowledgeable person manufacturing/processing food in your circumstances would identify contamination with environmental pathogens as a hazard requiring a preventive control. Sanitation controls include procedures, practices, and processes to ensure that the facility is maintained in a sanitary condition adequate to significantly minimize or prevent hazards such as environmental pathogens and biological hazards due to employee handling (see 21 CFR § 117.135(c)(3)). In addition, note that environmental monitoring is required if contamination of an RTE food with an environmental pathogen is a hazard requiring a preventive control (see 21 CFR § 117.165(a)(3)).

You do not have appropriate controls in place for contamination with environmental pathogens. You stated that you use Mrs. Meyer's Clean Day Multi-Surface Concentrate as the main cleaning solution for cleaning all areas of the facility including food-contact surfaces. This is labeled as a household cleaner, not for use on food-contact equipment in a food manufacturing facility. You further stated that you do not use any sanitizers at your facility, such as for food-contact surfaces.

c. You did not identify and evaluate bacterial pathogens, such as Salmonella, as a known or reasonably foreseeable hazard to determine whether they require a preventive control. Your facility manufactures RTE seasoning products made from onion powder, garlic powder, white pepper, paprika, cayenne pepper and celery powder which have been associated with vegetative bacterial pathogens such as *Salmonella*. A knowledgeable person manufacturing/processing food in your circumstances would identify bacterial pathogens as a hazard requiring a preventive control. Further, a facility that identifies raw materials and other ingredients that require a supply-chain-applied control, such as *Salmonella*, must establish and implement a risk-based supply-chain program for those raw materials and ingredients (See 21 CFR § 117.405(a)(1)). The supply-chain program must include using approved suppliers and conducting supplier verification activities (see 21 CFR § 117.410).

You do not have an appropriate supply-chain program in place. For example, you do not approve suppliers or conduct appropriate supplier verification activities for the manufacturing of John Paine's Steak Beast Unleashed All Purpose Rub (Lot: JPUL230216004), which consists of salt, brown sugar, onion powder, garlic powder, white pepper, black pepper, paprika, cayenne pepper, celery powder, and hickory smoke seasoning. *Salmonella* in RTE seasoning products is a hazard that can cause serious adverse health consequences or death and thus an annual onsite audit is the appropriate supplier verification activity unless there is a written determination that other verification activities and/or less frequent onsite auditing of the supplier provide adequate assurance that the hazard is controlled (see 21 CFR 117.430(b)). The audit must be conducted before using the raw material or other ingredient from the supplier and at least annually thereafter (see 21 CFR 117.430(b)(1)(ii)).

d. You did not identify and evaluate mycotoxins as a known or reasonably foreseeable hazard to determine whether they require a preventive control. Your facility manufactures and repackages RTE seasoning products made from white pepper, cayenne pepper, and paprika. These ingredients have been associated with mycotoxins. A knowledgeable person manufacturing/ processing food in your circumstances would identify mycotoxins as a hazard requiring a preventive control in these ingredients. Further, a facility that identifies raw materials and other ingredients that require a supply-chain-applied control, such as mycotoxins, must establish and implement a risk-based supply-chain program for those raw materials and ingredients (see 21 CFR § 117.405(a)(1)). The supply-chain program must include using approved suppliers and conducting supplier verification activities (see 21 CFR § 117.410). You do not have this program in place.

In your May 3, 2023, response, you included a written contract from a third-party consultant, signed May 1, 2023, to "write and implement your FDA-compliant Food Safety Program for repacking dry spices, herbs, teas and superfoods, train you and assure your operation is fully compliant with all FDA requirements." The contract also stated, "all FDA-compliant Food Safety Program documentation to be completed within 3 weeks of receiving back a signed proposal, a deposit payment and a completed client intake questionnaire." We cannot fully evaluate your response because you did not submit the completed food safety program or how you will assure that your facility is compliant with all FDA requirements.

### Misbranded Foods

1. Your John Paine's Steak Beast Unleashed All Purpose Rub product is misbranded within the meaning of 403(w) of the Act [21 U.S.C. § 343(w)] in that the finished product label fails to declare the major food allergen "milk" as

required by section 403(w)(1) of the Act.

Section 201(qq) of the Act [21 U.S.C. § 321(qq)] defines a major food allergen as milk, egg, fish, Crustacean shellfish, tree nuts, wheat, peanuts, soybeans, and sesame, as well as any food ingredient that contains protein derived from one of these foods, with certain exceptions, e.g., highly refined oils derived from a major food allergen. A food is misbranded if it is not a raw agricultural commodity and it is, or it contains, an ingredient that bears or contains, a major food allergen, unless either:

- The word "Contains," followed by the name of the food source from which the major food allergen is derived, is printed immediately after or is adjacent to the list of ingredients [section 403(w)(1)(A) of the Act, 21 U.S.C. § 343(w)(1)(A)], or
- The common or usual name of the major food allergen in the list of ingredients is followed in parentheses by the name of the food source from which the major food allergen is derived, except that the name of the food source is not required when either the common or usual name of the ingredient uses the name of the food source or the name of the food source appears elsewhere in the ingredient list (unless the name of the food source that appears elsewhere in the ingredient list appears as part of the name of an ingredient that is not a major food allergen) [section 403(w)(1)(B) of the Act, 21 U.S.C. § 343(w)(1)(B)].

Specifically, your Steak Beast Unleashed All Purpose Rub is manufactured using butter powder, which contains milk. However, "milk" is not declared in the ingredient statement, and the "Contains" statement does not declare the common or usual name of the food source from which the major food allergen is derived. The term "dairy" is not the appropriate name of the food source that must be used in the "Contains" statement.

2. Your John Paine's Steak Beast Beasty Bird is misbranded within the meaning of section 403(i)(1) of the Act [21 U.S.C. § 343(i)(1)] in that the product label fails to bear the common or usual name of the food. The statement of identity "Beasty Bird" is not provided by law or regulation, is not the common or usual name of a food, and is not appropriately descriptive, as required by 21 CFR 101.3(b).

3. Your John Paine's Steak Beast Beasty Bird, Chop Beast Pork Rub, Steak Seasoning, and Unleashed All Purpose Rub products are misbranded within the meaning of section 403(k) of the Act [21 U.S.C. § 343(k)] because the products bear or contain an artificial coloring but do not bear labeling stating that fact. Specifically, the formulation for Chop Beast Pork Rub, Steak Seasoning, and Unleashed All Purpose Rub lists "color – orange" as an ingredient, and the Beasty Bird formulation lists "color – red" as an ingredient. However, none of the product labels declare the artificial color in the ingredient statements. Note that if these color additives are certified, they must be declared in accordance with the 21 CFR 74, Listing of Color Additives Subject to Certification.

4. Your John Paine's Steak Beast Beasty Bird, Unleashed All Purpose Rub, Steak Seasoning, and Pork Rub products are misbranded within the meaning of section 403(i)(2) of the Act [21 U.S.C. § 343(i)(2)] in that the products are fabricated from two or more ingredients and each ingredient is not declared on the label in descending order of predominance by weight in the finished food. Specifically,

a. Your Beasty Bird formulation indicates "brownulated (sic) sugar" is the predominant ingredient; however, the ingredient statement on the product label declares salt as the first ingredient. According to 21 CFR 101.4(a)(1), ingredients shall be listed by their common or usual name in descending order of predominance by weight. The formulation also lists the following ingredients that are not declared on the label: celery salt (the label only lists "celery"), white pepper, cayenne pepper, and hot paprika.

b. Your Unleashed All Purpose Rub formulation lists butter powder as an ingredient; however, this ingredient is not declared on the label, as required by 21 CFR 101.4. Additionally, the Unleashed All Purpose Rub formulation indicates the product is made from one part Unleashed and two parts Steak Beast Original seasoning, which also

includes the following ingredients that are not declared on the Unleashed All Purpose Rub label: sugar (only "brown sugar" is declared on the label), black pepper, white pepper, cayenne pepper (the label only lists "pepper"), and celery salt.

c. Your Steak Beast Steak Seasoning formulation includes the following ingredients that are not declared on the product label: celery salt (as the label only lists "celery"), white pepper, and cayenne pepper. Note that the formulation does not include onion powder, but the label declares onion powder.

d. Your Chop Beast Pork Rub formulation includes the following ingredients that are not declared on the product label: celery salt (the label only lists "celery"), and white pepper.

e. Your Beasty Bird, Unleashed All Purpose Rub, Steak Beast Steak Seasoning, and Chop Beast Pork Rub formulations include celery salt as an ingredient. If celery salt is a multi-component ingredient, each ingredient of the celery salt must also be declared.

5. Your John Paine's Steak Beast Beasty Bird, Chop Beast Pork Rub, Steak Seasoning, and Unleashed All Purpose Rub products are misbranded within the meaning of section 403(e)(1) of the Act [21 U.S.C. § 343(e)(1)] in that they fail to list the name and place of business of the manufacturer, packer, or distributor in accordance with 21 CFR 101.5

6. Your John Paine's Steak Beast products (Beasty Bird, Chop Beast Pork Rub, Steak Seasoning, Unleashed All Purpose Rub), and Dr. Botanical Health Organic Elderberry Plant Based Superfood Powder and Dr. Botanical Health Organic Lion's Mane Mushroom Based Superfood Powder products are misbranded within the meaning of section 403(q) of the Act [21 U.S.C. § 343(q)] in that the nutrition information (e.g., Nutrition Facts label, "NFL") is not in accordance with the requirements under 21 CFR 101.9. Specifically,

a. The nutrients declared in the NFLs are not in accordance with 21 CFR 101.9(c). For example:

  i. The NFLs on the John Paine's Steak Beast products do not include the following required information: Total Sugars (rather than Sugars), Added Sugars, Vitamin D, Calcium, Iron, and Potassium, as required by 21 CFR 101.9(c).

  ii. The NFLs on the Dr. Botanical Health products do not include Sodium, Total Carbohydrates, Dietary Fiber, Total Sugars, Added Sugars, Vitamin D, Calcium, Iron, and Potassium, as required by 21 CFR 101.9(c).

b. The NFL format is not in accordance with 21 CFR 101.9(d). For example:

  i. The labels on the John Paine's products use a footnote not provided for in 21 CFR 101.9(d)(9).

  ii. The declaration of Calories from Fat on the John Paine's product labels is no longer permitted in the updated NFL.

  iii. The heading "Nutrition Facts Per 12 oz (340g)" on the John Paine's product labels is not in accordance with 21 CFR 101.9(d)(2).

  iv. The heading "Nutrition Facts Per 100g Bag" on the Dr. Botanical Health product labels is not in accordance with 21 CFR 101.9(d)(2).

  v. The John Paine's product labels declare a "Servings Per Package" of 227 servings, a serving size of "¼ tsp (5g)," and net quantity of contents of "12oz (340g)." The information in the NFL appears to be incorrect because 227 x 5g servings equates to 1,135g, which does not equal the net quantity of contents declared on the label.

c. The NFLs of the Dr. Botanical Health Organic Elderberry Plant Based Superfood Powder and Dr. Botanical Health Organic Lion's Mane Mushroom Based Superfood Powder include the ingredient statements. The NFL requirements under 21 CFR 101.9 does not provide for the inclusion of the ingredient statements. The ingredient statements must be separately declared on the principal display panel (PDP) or the information panel, in accordance with 21 CFR 101.4.

d. The Calories declarations on both the Dr. Botanical Health products are not expressed in the appropriate units and/or increments as required by 21 CFR 101.9(c). Additionally, the Organic Lion's Mane Carbohydrates declaration is also not expressed in the appropriate units and/or increments.

e. The Dr. Botanical Health product labels fail to list the percent daily values (%DV), as required by 21 CFR 101.9(c).

7. Your John Paine's Steak Beast products (Beasty Bird, Chop Beast Pork Rub, Steak Seasoning, and Unleashed All Purpose Rub) are misbranded within the meaning of section 403(e)(2) [21 U.S.C. § 343(e)(2)] because the labels fail to declare the net quantity of contents on the principal display panel, as required by 21 CFR 101.7(a).

8. Even if your Dr. Botanical Health Organic Elderberry Plant Based Superfood Powder and Dr. Botanical Health Organic Lion's Mane Mushroom Based Superfood Powder products were not unapproved new drugs and misbranded drugs, they are misbranded within the meaning of section 403(r)(1)(A) of the Act [21 U.S.C. 343(r)(1)(A)] because the product labels bear nutrient content claims, but the products do not meet the requirements to bear such claims. Under section 403(r)(1)(A) of the Act, a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation authorizing the use of such a claim. Characterizing the level of a nutrient in the food labeling of a product without complying with the specific requirements pertaining to nutrient content claims for that nutrient misbrands the product under section 403(r)(1)(A) of the Act.

Specifically, your Dr. Botanical Health Organic Elderberry Plant Based Superfood Powder and Dr. Botanical Health Organic Lion's Mane Mushroom Based Superfood Powder products bear the claim "Powerful Antioxidant." Nutrient content claims using the term "antioxidant" must comply with, among other requirements, the requirements listed in 21 CFR 101.54(g). These requirements state, in part, that for a product to bear such a claim, a reference daily intake (RDI) must have been established for each of the nutrients that are the subject of the claim [21 CFR 101.54(g)(1)], and these nutrients must have recognized antioxidant activity [21 CFR 101.54(g)(2)]. The level of each nutrient that is the subject of the claim must also be sufficient to qualify for the claim under 21 CFR 101.54(b), (c), or (e), as required by 21 CFR 101.54(g)(3). In addition, such a claim must include the names of the nutrients that are the subject of the claim as part of the claim or, alternatively, the term "antioxidant" or "antioxidants" may be linked by a symbol (e.g., an asterisk) that refers to the same symbol that appears elsewhere on the same panel of the product label, followed by the name or names of the nutrients with recognized antioxidant activity [21 CFR 101.54(g)(4)].

Your claim "Powerful Antioxidant" does not include the names of the nutrients that are the subject of the claim, or link the nutrients with the claim by use of a symbol.

Your Dr. Botanical Health Organic Elderberry Plant Based Superfood Powder also bears the nutrient content claim "Rich in Vitamins & Nutrients," but the product does meet the requirements to bear the claim. In accordance with 21 CFR 101.54(b), the terms "rich in," "high," or "excellent source of" may be used to characterize the level of a nutrient on the label and in the labeling of foods, provided that the food contains 20 percent or more of the RDI or Daily Reference Value (DRV) per reference amount customarily consumed. However, your product label does not list any vitamins and does not specify which nutrients the product is "rich in."

This letter is not intended to be an all-inclusive statement of violations that may exist in connection with your products. You are responsible for investigating and determining the causes of any violations and for preventing their recurrence or the occurrence of other violations. It is your responsibility to ensure that your firm complies with all requirements of federal law, including FDA regulations.

This letter notifies you of our concerns and provides you an opportunity to address them. Failure to adequately address this matter may result in legal action including, without limitation, seizure and injunction.

We also have the following comments on your Dr. Botanical Health products:

- Your Dr. Botanical Health Organic Elderberry Plant Based Superfood Powder and Dr. Botanical Health Organic Lion's Mane Mushroom Based Superfood Powder products are marketed as conventional foods. For example, you have included a "Nutrition Facts" panel on the product labels. However, these labels also contain the statement, "Statements regarding dietary supplement have not been evaluated by the FDA and are not intended to diagnose, treat, cure, or prevent and [sic] disease or health condition." To the extent you intend these products to be conventional foods, you should not refer to them as dietary supplements. We note that, under section 201(ff)(2)(B) of the Act, a dietary supplement "means a product that . . . is not represented for use as a conventional food or as a sole item of a meal or the diet."

- For your Dr. Botanical Health product labels, the provisions in 21 CFR 101.7(j)(3) state that the term "net weight" must be used when stating the net quantity of contents in terms of weight. In addition, the regulation does not provide for the term "servings" as part of the net quantity of contents statement.

- The statement of the place of business must include the street address, city, State, and ZIP code; however, the street address may be omitted if it is shown in a current city directory or telephone directory. 21 CFR 101.5(d). Please note that the regulation does not provide for the use of PO Box in lieu of a street address.

- We note that the product labels for your Dr. Botanical Health products bear the disclaimer, "May be packaged in a facility that also packs nuts." Advisory labeling is not a substitute for adherence to current good manufacturing practices and, when used by a facility, food allergen preventive controls. See Questions and Answers

Regarding Food Allergens, Including the Food Allergen Labeling Requirements of the Federal Food, Drug, and Cosmetic Act (Edition 5): Guidance for Industry. The firm should make every effort to ensure that they and their suppliers have adequate GMP's in place to prevent the unintentional inclusion of allergens in their products and ingredients.

Please notify FDA in writing, within 15 working days of receipt of this letter, of the specific steps you have taken to address any violations. Include an explanation of each step being taken to prevent the recurrence of violations, as well as copies of related documentation. If you cannot complete corrective actions within 15 working days, state the reason for the delay and the time within which you will do so. If you believe that your products are not in violation of the Act, include your reasoning and any supporting information for our consideration.

Your written response should be sent to René R. Ramirez, Compliance Officer, U.S. Food and Drug Administration One Main Place, 1201 Main Street, STE 7200, Dallas, TX 75202, or via email at rene.ramirez@fda.hhs.gov. If you have any questions regarding the content of this letter, please contact Mr. Ramirez at 210-308-1425 or rene.ramirez@fda.hhs.gov.

Sincerely,
/S/

Edmundo Garcia, Jr.
Program Division Director HAF West 3
Dallas District Director

⊖ More Warning Letters (/inspections-compliance-enforcement-and-criminal-investigations/compliance-actions-and-activities/warning-letters)

# EXHIBIT 4

**WARNING LETTER**

# Hekma Center, LLC

### MARCS-CMS 637652 — JUNE 02, 2023

---

**Delivery Method:**

United Parcel Service

**Product:**

Dietary Supplements

---

**Recipient:**

Mr. Younis

Hekma Center, LLC

24A Trolley Square #2131

Wilmington, DE 19806

United States

**Issuing Office:**

Center for Food Safety and Applied Nutrition (CFSAN)

United States

---

June 2, 2023

RE: CMS # 637652

Dear Mr. Younis:

This letter is to advise you that the U.S. Food and Drug Administration (FDA) reviewed your website at https://www.hekmac.com in February 2023 and has determined that you take orders there for your Natural Supplements for Anemia, Lymf (Galium aparine), Natural Supplements for Cardiomyopathy, Magic1 (Moringa oleifera), Natural Supplements for Diabetes Mellitus, Cinna (Cinnamomum Zeylanicum), Natural Supplements for High Blood Pressure – Hypertension, kraph (Apium graveolens), Natural Supplements for Stroke – CVA, Cam1 (Silybum marianum), Danshen (Red sage), Multiple Sclerosis Package, and Smile Package products.

We also reviewed your social media websites, https://www.facebook.com/hekmac.supplement, https://www.instagram.com/hekma.c, https://twitter.com/hekma_center, and https://www.youtube.com/channel/UC_eIcBlLWbVkaj96gurUDdw, each of which directs consumers to your website, https://www.hekmac.com, to purchase your products. The claims on your website and social media websites establish that your products are drugs under section 201(g)(1)(B) of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. § 321(g)(1)(B)] because they are intended for use in the cure, mitigation, treatment, or

prevention of diseases. As explained further below, introducing or delivering these products for introduction into interstate commerce for such uses violates the Act. You can find the Act and FDA regulations through links on FDA's home page at www.fda.gov.

Examples of some of the website claims that provide evidence that your products are intended for use as drugs include the following:

**Natural Supplements for Anemia**

On your "Natural Supplements for Anemia" product page at https://www.hekmac.com/en.shop2 /supplements-for-anemia:

- "Supplement package for Anemia – Iron Deficiency"
- "All products are safe for use and are very potent in helping people with Anemia."
- "Indicated for: People with Anemia"
- "Many scientific studies have proven the medicinal properties and the efficiency of these herbs in helping with Anemia naturally without causing any side effects."
- "Patients with acute anemia should add royal sidr product (sidr honey with royal jelly) [an ingredient in your Multiple Sclerosis Package] to the package above."

**Lymf (Galium aparine)**

On your "Cleavers-Goosegrass" product page (which you also describe as your "Lymf Product") at https://www.hekmac.com/en/shop2/cleavers-goosegrass:

"Lymf product – Cleavers is indicated for:
...
2. Edema and fluid retention in the abdomen
3. A large scale of skin diseases and inflammations such as psoriasis, eczema....
4. Detoxification because it purifies the body from accumulated toxins.
5. Urinary system diseases such as urine detention, kidney and bladder stones, overactive bladder (OAB), urinary tract infections and prostatitis.
...
7. Gout and rheumatism, as well as osteoarthritis which is the most common bone disease.
8. Cystic mastopathy.
9. Interstitial Lung Disease.
10. Gastritis and duodenitis, as well as for gastric ulcer
11. . . . hepatohemia and liver cyst.
12. Patients with acute anemia.
13. Constipation . . .
14. Swelling of the Vocal cords.
15. High blood pressure – Hypertension.
16. Some cases of kidney failure . . .
17. Thyroid gland disorders."

**Natural Supplements for Cardiomyopathy**

On your "Natural Supplements for Cardiomyopathy" product page at https://www.hekmac.com/en.shop2 /supplements-for-cardiomyopathy:

• "Supplement package for Cardiomyopathy – Heart Muscle Weakness"

• "All products are safe for use and are very potent in helping people with Cardiomyopathy – Heart Muscle Weakness."

• "Indicated for: People with Cardiomyopathy"

• "Many scientific studies have proven the medicinal properties and the efficiency of these herbs in helping with Cardiomyopathy naturally without causing any side effects."

• "Patients who have edema – fluid retention, should also add 1 bottle of . . . Lymf product (Gallium aparine), Kraph product (Apium Graveolens)."

**Magic1 (Moringa oleifera)**

On your "Moringa Oleifera leaves" product page (which you also describe as your "Magic1 Product") at https://www.hekmac.com/en/shop2/moringa-oleifera/:

"Magic1 product - Moringa Oleifera is indicated:

1. for Osteoporosis. It is a very important dietary supplement for women above the age of 45. Moringa may help in bone healing process after a fracture because it is rich in easily absorbed calcium...

3. as a dietary supplement to strengthen the immune system against diseases . . .

4. for Arthritis and joint pain.

5. to balance blood sugar level and effectively improve Diabetes type 2.

6. for Anemia because it is very rich in iron and vitamin B12.

7. to balance cholesterol and triglycerides level in the blood.

8. for Gout.

...

10. . . . heart diseases such as atherosclerosis, weak heart muscle, and thrombosis . . .

11. to reduce high blood pressure.

12. for hair loss . . ."

"Additional Indications:

1. May help with kidney stones and effectively improves liver infections and liver cirrhosis . . .

2. for parasites, fungi and worms in the digestive system and the intestines.

3. for ulcerative colitis, for small intestine inflammation and for Crohn's disease. It is also indicated for stomach and duodenum ulcer, Helicobacter and digestive system disorders.

4. for asthma and allergies of the respiratory system.

5. To balance thyroid gland functioning especially in case of Hypothyroidism . . .

6. . . . It also alleviates blood clotting and regulates heartbeat

. . .

10. . . . eliminate dementia and Alzheimer's disease.

11. for Systemic Lupus Erythematous (SLE).

12. for migraine."

"More Indications

. . .

5. for Multiple sclerosis (MS). It limits disease progression.

6. to protect brain cells from a stroke. Prefer to take it after a stroke to reduce its effects.

7. for brain diseases . . . and Parkinson's disease.

. . .

9. may help overcome acute hepatitis B.

. . .

12. for herpes and genital herpes."

## Natural Supplements for Diabetes Mellitus

On your "Natural Supplements for Diabetes Mellitus" product page at https://www.hekmac.com/en.shop2 /supplements-for-diabetes:

• "Supplement Package for Diabetes Mellitus - Type 2"
• "All products are safe for use and are very potent in helping people with Diabetes mellitus."
• "Indicated for: People with Diabetes Mellitus"
• "Many scientific studies have proven the medicinal properties and the efficiency of these herbs in helping with Diabetes mellitus naturally without causing any side effects."
• "If the patient has hypertension or other cardiovascular disease, we recommend to add 1 . . . ...1 bottle of Danshen product (salvia miltiorrhiza) to the package above."

Your website also contains evidence of intended use in the form of personal testimonials recommending or describing the use of Natural Supplements for Diabetes Mellitus for the cure, mitigation, treatment, or prevention of disease. Examples of such testimonials include:

On your webpage titled, "Overcoming Diabetes Completely is Possible! Read the Story of Mr. Murtada from KSA" accessible at https://www.hekmac.com/en/overcoming-diabetes-completely/:

• "33-year-old Mr. Murtada from KSA is one of many cases that overcame diabetes type 2.
He contacted our team . . . describing his health condition and informing us that he takes 'Omformin' (a medication for reducing high blood sugar levels). Hekma Center's team inquired about his condition and his prescribed medications. In turn, Mr. Murtada provided them all the information, and the team prepared a suitable wellness package. . . . Mr. Murtada delivered wonderful news, he reduced the Omformin dose to one per day after he used to take 4 and a half! Mr. Murtada said, 'I loved the supplements you provide.' The organic, herbal supplement from Hekma Center contributed to reducing the prescribed diabetes medication dose, which confirms that he is on the right path to overcoming diabetes completely. . . Mr. Murtada sent his newest test results . . . The CBC test generally reveals several diseases, including diabetes, by measuring the blood sugar levels from the blood sample. Moreover, it helps to know the glucose levels in the blood and avoid getting diabetes mellitus. Mr. Murtada did this test, and the results showed that the diabetes test came out normal in the fasting and accumulated blood sugar tests. We congratulate Mr. Murtada on overcoming diabetes entirely as if it never existed. We are delighted with these incredible results."

## Cinna (Cinnamon zeylanicum)

On your "Cinnamon – Cinnamomum Zeylanicum" product page (which you also describe as your "Cinna Product") at https://www.hekmac.com/en/shop2/cinnamon/:

"Cinna product - Cinnamon indications:
1. Cinnamon . . . may help remove bile salts, thus may help with any damage that may occur to colon cells and reduces the risk of having various colon diseases.
2. to balance blood sugar level . . . 3-6 grams of cinnamon a day reduces blood sugar level 29%, which very much may help patients with diabetes type 2.
3. to reduce cholesterol level. The fibers and calcium in cinnamon eliminate bile salt from the body. When bile salt is eliminated, the body breaks down cholesterol in order to produce a new bile. This process may help

reduce high cholesterol level. According to a study conducted in 2003, 1 teaspoon a day (1 gram) of cinnamon significantly reduce LDL (bad cholesterol) and triglycerides.

4. to improve blood circulation since it contains a large amount of coumarin, which may help with blood clotting that may cause heart disease . . .

5. for arthritis because it has anti-inflammatory properties . . . It also may help with muscle dystrophy."

"Additional Indications

1. Candida infection and various fungal diseases because it is anti-fungal.

2. . . . It also used for chronic diarrhea, irritable bowel syndrome (IBS) and constipation.

3. Cinnamon supports the respiratory system diseases and disorders such as, severe cold, cough, chronic cough, flu, sore throat, pulmonary fibrosis, phlegm, mucus and inflamed tonsils.

4. for menstrual cycle pain, postpartum uterus pain and contractions, as well as hypomenorrhea.

. . .

6. . . . chronic fatigue.

7. for high blood pressure.

8. for urinary tract infections, vaginal secretions in addition to inflammations in the reproductive system . . .

9. . . . It may help with memory loss and dementia.

10. . . . it is a great supplement in cases of high fever.

. . .

12. for muscle atrophy . . .

13. for multiple sclerosis.

14. for a headache caused by cold air, migraine and pain in general.

## Natural Supplements for High Blood Pressure – Hypertension

On your "Natural Supplements for High Blood Pressure - Hypertension" product page at https://www.hekmac.com/en.shop2/supplements-high-blood-pressure:

• "Supplement package for High Blood Pressure - Hypertension"

• "All products are safe for use and are very potent in helping people with High Blood Pressure."

• "Indication for: People with High Blood Pressure - Hypertension"

• "Many scientific studies have proven the medicinal properties and the efficiency of these herbs in helping with High Blood Pressure naturally without causing any side effects."

## kraph (Apium graveolens)

On your "Celery Seed – Apium Graveolens" product page (which you also describe as your "kraph product") at https://www.hekmac.com/en/shop2/celery-seed-apium-graveolens:

"kraph product - Celery seed is indicated for:

1. Acute urinary tract inflammations, urinary tract stones, and kidney diseases . . .

2. Ascites (an accumulation of fluid in the limbs and abdomen) and as a diuretic.

3. Rheumatoid arthritis in addition to rheumatoid pain and muscle aches.

4. Gout.

5. Hypertension ...because it reduce high blood pressure.

6. To relieve cough and reduce phlegm.

. . .

8. Some brain diseases like dementia, Alzheimer's, multiple scleroses [sic] (MS) and also cerebritis.

. . .

11. Jaundice . . .

12. Anorexia . . .

13. To reduce LDL cholesterol (bad cholesterol).

14. As a tranquilizer to reduce stress . . .

15. Insomnia . . .

16. Impotence . . .

. . .

18. . . . anti-inflammatory.

19. Also for Sciatica."

## Natural Supplements for Stroke - CVA

On your "Natural Supplements for Stroke - CVA" product page at https://www.hekmac.com/en.shop2/supplements-for-stroke-cva/:

• "Supplement package for Stroke – CVA [cerebral vascular accident]"

• "All products are safe for use and are very potent in helping people with stroke."

• "Indicated for: People with Stroke - CVA"

• "Many scientific studies have proven the medicinal properties and the efficiency of these herbs in helping with Stroke naturally without causing any side effects."

Your website also contains evidence of intended use in the form of personal testimonials recommending or describing the use of Natural Supplements for Stroke – CVA for the cure, mitigation, treatment, or prevention of disease. Examples of such testimonials include:

On your webpage titled, "After One Week of Taking the Stroke Herbal Supplements; Mr. Ali from Oman Started Improving!" at https://www.hekmac.com/en/mr-ali-started-improving/:

• "76-year-old Mr. Ali had a stroke when he was 74 years old, and it led to many complications, and his condition severely deteriorated. He was not able to walk, speak, drink water, and swallow properly. As well as problems and difficulty breathing, constant phlegm, and a bad mental state. Not to mention that he suffered for a long time from diabetes and high blood pressure. . . Mr. Ali's son . . . contacted Hekma Center's team through email to inquire about a relief method for his father. Doctor Sarah replied to him and helped him order the wellness supplement package for strokes . . . After only one week of taking the supplements for strokes' [Mr. Ali's son] contacted the personal doctor from Hekma . . . and informed her that his father's condition significantly improved! [He] pointed out that the stroke complications noticeably decreased; wherein he is more energetic, in a great mental state, has no breathing difficulties, and phlegm greatly decreased."

## Cam1 (Silybum marianum)

On your "Milk Thistle – Silybum Marianum" product page (which you also describe as your "Cam1 product") at https://www.hekmac.com/en/shop2/milk-thistle/:

"Cam1 product - Milk thistle is indicated for:

1. Different liver diseases and liver infections . . . It is scientifically proven that it can alleviate Hepatitis C and B, and in most cases even heal it completely, if taken for a period of two consecutive months.

2. Liver cleansing from alcohol toxins, drugs toxins, and virus toxins.

3. Fatty liver, Hepatic fibrosis, liver cirrhosis and for liver dysfunction . . .

4. Chronic Hepatitis and Alcoholic Hepatitis.

5. Crohn's disease, Ulcerative colitis, and gastroenteritis.

6. . . . chronic diarrhea, vomiting, nausea and others, and for renal infection and renal toxicity.

7. May help with dyspepsia . . .

. . .

11. . . . dyspepsia especially in children, and may to help with food allergy in an early age . . ."

12. Hypercholesteremia and Hypertriglyceridemia

. . .

14. Allergies"

"Additional Uses

1. Internal and external hemorrhoids.

2. Different skin problems like . . .psoriasis.

. . .

4. Some cases of migraine.

5. Hypotension. Which is a rare feature for medicinal herbs.

. . .

8. Milk Thistle [an ingredient in your Cam1 product] reduces cholesterol- LDL level and may help with its oxidation and deposit in arteries walls, a thing that might cause a heart attack."

9. May help with the formation of gallstones . . .

10. To effectively reduce high fever.

11. Parkinson's disease.

. . .

13. In combination with drugs that may cause damage to the liver, in order to protect the liver from liver damage.

14. To reduce insulin intake especially in diabetes patients and hepatic fibrosis patients.

15. Severe constipation.

16. Varicosis.

17. Uterine congestion and uterus infection."

## Danshen (red sage)

On your "Red Sage – Dan shen" product page at https://www.hekmac.com/en/shop2/red-sage-dan-shen:

• "It [Red sage, an ingredient in your Danshen product] supports various heart diseases, chest pain and tightness in the chest, palpitation . . . sleep disorders, menstruation disorders, stomachache"

• "Red sage increases blood flow in different ways: by reducing blood clots\ thromboses . . . and by reducing cholesterol level."

• "Dan Shen Product – Red Sage is [sic] Indications:

1. Angina pectoris, Myocardial infarction and heart failure . . .

2. Cardiovascular diseases . . . atherogenesis, Arrhythmia, and hypertrophy . . .

3. Hypertriglyceridemia.

4. Hypertension and poor Peripheral blood flow, as well as, promotes hypercoagulability of the blood.

5. Viral hepatitis, liver fibrosis, cirrhosis, cystic liver . . . fatty liver. . . .

6. Multiple sclerosis (MS).

7. Pancreatitis and gallbladder infections.

8. Digestive system disorders such as difficulty digesting fats (Dyspepsia), irritable bowel syndrome (IBS), ulcerative colitis, Crohn's disease . . ."

9. Menstruation disorders . . . amenorrhea, infertility and irregular uterine bleeding."

• "Additional Indications

. . .

2. Anemia especially after excessive bleeding.

3. Osteoporosis, Avascular necrosis and Osteonecrosis . . .

4. Impotency and infertility in men . . .

. . .

6. May help protect and support people with Diabetes type 2 and type 1.

7. Mental-emotional disorders . . . mental exhaustion, sleeping disorders, palpitation . . . and even depression.

8. Chronic skin diseases in children and adults and for allergies especially if they are related to liver dysfunction or digestive system dysfunction.

9. Stomach and duodenal ulcers and for intractable wounds.

10. It protects against Alzheimer [sic] and dementia in the elderly.

11. Arthritis. . .

12. . . . It strengthens the immune system especially for people that suffer from recurrent infections and viral diseases.

13. Supports chronic bronchitis.

. . .

15. Anaphylaxis.

16. As an anti-microbial . . .

17. Also to improve kidney function after a kidney transplant."

On your Youtube video titled, "Benefits of Organic red sage – Dan shen capsules" at https://www.youtube.com /watch?v=XAgF_mmwBes, which includes links in the video description where the product can be purchased on https://www.hekmac.com:

In the video description:
• "Dan shen . . . treats various heart diseases, chest pain and tightness in the chest, palpitation . . . sleep disorders, menstruation disorders, stomachache and more."

Text in the video:
• "It is mostly used to . . . treat various heart diseases" (0:32)
• "also used to treat: chest pain . . . sleep disorders, menstruation disorders and stomachache." (0:39)
• "Research conducted on Red sage [an ingredient in your Dan shen product] indicated that it has [the] same effect as Nitroglycerin a drug used to expand blood vessels" (0:57)
• "it helps treat diseases like Avascular necrosis and Osteonecrosis" (1:18)
• "It increases blood flow by: reducing blood clots . . . by reducing cholesterol" (1:49)
• "Dan Shen product is indicated for: Digestive disorders . . ." (2:06)

## Multiple Sclerosis Package

On your Facebook page at https://www.facebook.com/hekmac.supplement:

• In a November 9, 2021 post titled, "The Journey of Jy in Winning Over MS – Multiple Sclerosis Disease – Hekma Center" which links to your website where the "Multiple Sclerosis Package" is offered for sale with the following claims:

    o "Clinical signs, symptoms, physical and mental status were improved in an MS patient after a short period

of using Hekma Center natural supplements"

   o "Contains the natural supplements that will help you overcome and get rid of this disease."

**Smile Package**

On your "Smile Package" product page at https://www.hekmac.com/en/shop2/smile-package:
• "High-quality natural products to relieve depression, nervousness, tension, anxiety, panic, fatigue, exhaustion . . ."
• "Indicated for: People with Depression"

On your Instagram page at https://www.instagram.com/hekma.c and on your Twitter page at https://twitter.com/hekma_center you link to your "Smile Package" product page with the hashtags "#smile_pakage [sic] . . . #Depression."

Your Natural Supplements for Anemia, Lymf (Galium aparine), Natural Supplements for Cardiomyopathy, Magic1 (Moringa oleifera), Natural Supplements for Diabetes Mellitus, Cinna (Cinnamomum Zeylanicum), Natural Supplements for High Blood Pressure – Hypertension, kraph (Apium graveolens), Natural Supplements for Stroke – CVA, Cam1 (Silybum marianum), Danshen (Red sage), Multiple Sclerosis Package, and Smile Package products are not generally recognized as safe and effective for the above referenced uses and, therefore, these products are "new drugs" under section 201(p) of the Act [21 U.S.C. 321(p)]. With certain exceptions not applicable here, new drugs may not be legally introduced or delivered for introduction into interstate commerce without prior approval from FDA, as described in sections 301(d) and 505(a) of the Act [21 U.S.C. 331(d), 355(a)]. FDA approves a new drug on the basis of scientific data and information demonstrating that the drug is safe and effective.

A drug is misbranded under section 502(f)(1) of the Act [21 U.S.C. 352(f)(1)] if the drug fails to bear adequate directions for its intended use(s). "Adequate directions for use" means directions under which a layperson can use a drug safely and for the purposes for which it is intended (21 CFR 201.5). Prescription drugs, as defined in section 503(b)(1)(A) of the Act [21 U.S.C. 353(b)(1)(A)], can only be used safely at the direction, and under the supervision, of a licensed practitioner.

Your products Lymf (Galium aparine), Natural Supplements for Cardiomyopathy, Magic1 (Moringa oleifera), Natural Supplements for Diabetes Mellitus, Cinna (Cinnamomum Zeylanicum), Natural Supplements for High Blood Pressure – Hypertension, kraph (Apium graveolens), Natural Supplements for Stroke – CVA, Cam1 (Silybum marianum), Danshen (Red sage), Multiple Sclerosis Package, and Smile Package are intended for treatment of one or more diseases that are not amenable to self-diagnosis or treatment without the supervision of a licensed practitioner. Therefore, it is impossible to write adequate directions for a layperson to use your products safely for their intended purposes. Accordingly, Lymf (Galium aparine), Natural Supplements for Cardiomyopathy, Magic1 (Moringa oleifera), Natural Supplements for Diabetes Mellitus, Cinna (Cinnamomum Zeylanicum), Natural Supplements for High Blood Pressure – Hypertension, kraph (Apium graveolens), Natural Supplements for Stroke – CVA, Cam1 (Silybum marianum), Danshen (Red sage), Multiple Sclerosis Package, and Smile Package fail to bear adequate directions for their intended uses and, therefore, the products are misbranded under section 502(f)(1) of the Act [21 U.S.C. 352(f)(1)]. The introduction or delivery for introduction into interstate commerce of this misbranded drug violates section 301(a) of the Act [21 U.S.C. 331(a)].

This letter is not intended to be an all-inclusive statement of violations that may exist in connection with your products. You are responsible for investigating and determining the causes of any violations and for preventing their recurrence or the occurrence of other violations. It is your responsibility to ensure that your firm complies

with all requirements of federal law, including FDA regulations.

This letter notifies you of our concerns and provides you an opportunity to address them. Failure to adequately address these matters may result in legal action including, without limitation, seizure and injunction.

Within fifteen working days of receipt of this letter, please notify this office in writing of the specific steps you have taken to address these matters. Include an explanation of each step being taken to prevent the recurrence of violations, as well as copies of related documentation. If you cannot complete corrective action within fifteen working days, state the reason for the delay and the time within which you will complete the correction. If you believe that your products are not in violation of the Act, include your reasoning and any supporting information for our consideration.

Your written reply should be directed to Dr. Aaron Dotson, Compliance Officer, United States Food and Drug Administration, Center for Food Safety and Applied Nutrition, 5001 Campus Drive, Office of Compliance (HFS-608), Division of Enforcement, College Park, Maryland 20740-3835 or via email at CFSANResponse@fda.hhs.gov. If you have any questions, you may also email at CFSANResponse@fda.hhs.gov.

Sincerely,
/S/

Ann M. Oxenham
Director
Office of Compliance
Center for Food Safety
  and Applied Nutrition
Food and Drug Administration

---

◉ More Warning Letters (/inspections-compliance-enforcement-and-criminal-investigations/compliance-actions-and-activities/warning-letters)

# EXHIBIT 5

**WARNING LETTER**

# Brilliant Enterprises LLC

**MARCS-CMS 609523 — JULY 20, 2021**

---

**Delivery Method:**

VIA UPS and Electronic Mail

**Product:**

Drugs

Food & Beverages

---

**Recipient:**

Adam and Angela Schultz

Brilliant Enterprises LLC

621 Main Street, Unit 182
Gaylord, MI 49735
United States

✉ support@levelupmushrooms.com (mailto:support@levelupmushrooms.com)

**Issuing Office:**

Office of Human and Animal Food Operations Division- East 6

United States

---

**WARNING LETTER**
**FY 21- HAFE6 WL- 03**

July 20, 2021

Dear Adam and Angela Schultz:

This letter is to advise you that the U.S. Food and Drug Administration (FDA) reviewed your website at https://levelupmushrooms.comin June and July 2021 and has determined that you take orders there for the products Lion's Mane, BoomChaga, CordaCex, and LVL:MAX. We have also reviewed your social media websites atwww.instagram.com/levelupmushrooms and https://twitter.com/LvlUpMushrooms, which direct consumers to your website https://levelupmushrooms.com to purchase your products. The claims on your websites establish that these products are drugs under section 201(g)(1)(B) of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. 321(g)(1)(B)] because they are intended for use in the cure, mitigation, treatment, or prevention of disease. As explained further below, introducing or delivering these products for introduction into interstate commerce for such uses violates the Act. You can find the Act and FDA regulations

through links on FDA's home page at www.fda.gov. (//www.fda.gov.) ☑ (http://www.fda.gov/about-fda/website-policies/website-disclaimer)

Examples of some of the claims observed on your websites that provide evidence that your products are intended for use as drugs include:

**Lion's Mane**

On the product webpage for Lion's Mane of your website https://levelupmushrooms.com:
• "Protects Against Ulcers in the Stomach: Goodbye Pain"
• "Relieves Depression and Anxiety: We All Need Relief"
• "[R]elieves depression and anxiety..."

On the scientific studies webpage of your website https://levelupmushrooms.com, under the heading "Lion's Mane Scientific Studies":
• "Lion's Mane May Be Effective in Combating Dementia/Alzheimer's Disease"
• "Lion's Mane Has Shown In Studies That It Could Reduce Anxiety And Depression"
• "Animal Testing Shows Lion's Mane Helps Control Diabetes Symptoms By Keeping Blood Sugar Low"

**BoomChaga**

On the product webpage for BoomChaga of your website https://levelupmushrooms.com:
• "Lowers Cholesterol: Live Longer"
• "BoomChaga is 100% Chaga Mushroom. ...More importantly, this mushroom is absolutely LOADED in antioxidants which are known cancer fighters."
• "Chaga contains more antioxidants . . . Antioxidants are those things that you always hear about but don't know what they do. What they do is ... because they repair DNA and ward off cancer. . . . it also improves health by showing its ability to fight inflammation and help with irritable bowel syndrom in other studies."
• "Data has shown that Chaga could help ward off the following health problems: Diabetes, lrratable Bowel Syndrome, and viral infections such as Herpes."

On the scientific studies webpage of your website https://levelupmushrooms.com, under the heading "Chaga (BOOMCHAGA!) Scientific Studies":
• "Potential For Fighting Cancer Due To The Extremely High Level of Anti-oxidants In Chaga"
• "Anti-diabetic Effects"
• "Help For Inflammatory Bowel Disease (irritable bowel)"
• "Anti-viral Effects (herpes simplex)"

**CordaCex**

On the product webpage for CordaCex of your website https://levelupmushrooms.com:
• "CORDACEX BENEFITS...reduces inflammation, shows cancer fighting properties..."

**LVL:MAX**

On the product webpage for LVL:MAX of your website https://levelupmushrooms.com:
• "Our product has helped 100's of people with anxiety and other mental problems..."

On your social media website www.instagram.com/levelupmushrooms:
• "...Feeling a little down and depressed?... Did you know we can help with all that and more with just some

awesome mushrooms?... #LevelUpMushrooms . . . #DepressionAndAnxiety #BeatDepression #BeatAnxiety. . ." [From a June 25, 2020 post that includes an image of your LVL:MAX product]

On your social media website https://twitter.com/LvlUpMushrooms:
• "LVL:MAX . . . Protects Against Ulcers in the Stomach: Goodbye Pain... Relieves Depression and Anxiety... Lowers Cholesterol: Live Longer...Lower Inflammation..." [From a Nov 12, 2019 post]

Your Lion's Mane, BoomChaga, CordaCex, and LVL:MAX products are not generally recognized as safe and effective for the above referenced uses and, therefore, these products are "new drugs" under section 201(p) of the Act [21 U.S.C. 321(p)].With certain exceptions not applicable here, new drugs may not be legally introduced or delivered for introduction into interstate commerce without prior approval from the FDA, as described in sections 301(d) and 505(a) of the Act [21 U.S.C. 331(d) and 355(a)]. FDA approves a new drug on the basis of scientific data and information demonstrating that the drug is safe and effective.

A drug is misbranded under section 502(f)(1) of the Act [21 U.S.C. 352(f)(1)] if the drug fails to bear adequate directions for its intended use(s). "Adequate directions for use" means directions under which a layperson can use a drug safely and for the purposes for which it is intended (21 CFR 201.5). Prescription drugs, as defined in section 503(b)(1)(A) of the Act [21 U.S.C. 353(b)(1)(A)], can only be used safely at the direction, and under the supervision, of a licensed practitioner.

Your Lion's Mane, BoomChaga, CordaCex, and LVL:MAX products are intended for treatment of one or more diseases that are not amenable to self-diagnosis or treatment without the supervision of a licensed practitioner. Therefore, it is impossible to write adequate directions for a layperson to use your products safely for their intended purposes. Accordingly, Lion's Mane, BoomChaga, CordaCex, and LVL:MAX fail to bear adequate directions for their intended use and, therefore, the products are misbranded under section 502(f)(1) of the Act [21 U.S.C. 352(f)(1)]. The introduction or delivery for introduction into interstate commerce of these misbranded drugs violates section 301(a) of the Act [21 U.S.C. 331(a)].

This letter is not intended to be an all-inclusive statement of violations that may exist in connection with your products. You are responsible for investigating and determining the causes of any violations and for preventing their recurrence or the occurrence of other violations. It is your responsibility to ensure that your firm complies with all requirements of federal law, including FDA regulations.

This letter notifies you of our concerns and provides you an opportunity to address them. Failure to adequately address this matter may result in legal action including, without limitation, seizure and injunction.

Please notify FDA in writing, within fifteen working days of receipt of this letter, of the specific steps you have taken to address any violations. Include an explanation of each step being taken to prevent the recurrence of violations, as well as copies of related documentation. If you cannot complete corrective action within fifteen working days, state the reason for the delay and the time within which you will do so. If you believe that your products are not in violation of the Act, include your reasoning and any supporting information for our consideration.

Your response should be sent to U.S. Food and Drug Administration, Lauren Sexton, Compliance Officer, 300 River Place, Suite 5900, Detroit, MI 48207 or by email to Lauren.Sexton@fda.hhs.gov.

Sincerely,
/S/

William R. Weissinger, MS

Program Division Director

Office of Human and Animal Food Operations

Division- East 6

 More Warning Letters (/inspections-compliance-enforcement-and-criminal-investigations/compliance-actions-and-activities/warning-letters)

# EXHIBIT 6

WARNING LETTER

# Spartan Enterprises Inc. dba Watershed Wellness Center

### MARCS-CMS 642030 − MARCH 08, 2023

**Delivery Method:**

Via Email

**Product:**

Drugs

Food & Beverages

**Recipient:**

Robert F. McCauley

President/Owner

Spartan Enterprises Inc. dba Watershed Wellness Center

16280 National Parkway
Lansing, MI 48906
United States

**Issuing Office:**

Division of Human and Animal Food Operations East VI

United States

**WARNING LETTER**
**FY23-HAFE6-01 CMS 642030**

March 8, 2023

Dear Mr. McCauley:

The U.S. Food and Drug Administration (FDA) inspected your dietary supplement manufacturing facility, located at 16280 National Parkway, Lansing MI, from June 29 through July 25, 2022. We also reviewed your websites at www.watershed.net and www.shop.watershed.net in December 2022, and your YouTube channel. Based on inspectional findings and a review of your websites, we have identified serious violations of the Federal Food, Drug, and Cosmetic Act (the Act) and applicable regulations. You can find the Act and FDA regulations through links on the FDA's home page at http://www.fda.gov.

**Unapproved New/Misbranded Drugs**

This is to advise you that the FDA reviewed your product labels following the inspection of your facility. In

addition, FDA reviewed your website www.shop.watershed.net in December 2022, and determined you take orders from the products Dr. Bob's Naturals Spirulina, Dr. Bob's Naturals Magtein, Dr. Bob's Naturals Tulsi-Holy Basil Extract Capsules, Dr. Bob's Naturals Milk Thistle Liver Support, Dr. Bob's Naturals Stone Breaker Powder, Dr. Bob's Parasite Killer, Dr. Bob's Naturals Parasite Killer Bundle, Dr. Bob's Naturals Parasite Killer Bundle MINI, Dr. Bob's Naturals Yew VeggieCaps, Dr. Bob's Naturals Gingko Magic, and Dr. Bob's Naturals Chlorella, and Raw Food World Ashwagandha Extract. We also reviewed your website www.watershed.net, which directs consumers to your website www.shop.watershed.net to purchase your products, and your YouTube Channel at www.youtube.com/c/DrBobMcCauley, in December 2022. The claims on your product labels, websites, and your YouTube Channel establish that these products are drugs under section 201(g)(1)(B) of the Act [21 U.S.C. § 321(g)(1)(B)] because they are intended for use in the cure, mitigation, treatment, or prevention of disease. As explained further below, introducing, or delivering for introduction into interstate commerce for such uses violates the Act.

Examples of some of the claims that provide evidence that your products are intended for use as drugs include:

From your website at www.watershed.net:

o **Spirulina [an ingredient in Dr. Bob's Naturals Spirulina tablets]:** the following statements are included in the description: "Lowers LDL and Triglyceride Levels", "Anti-Inflammatory Properties", "Fights Anemia"

o **Ashwagandha [an ingredient in the Raw Food World Ashwagandha Extract]:** the following statements are included in the description: "It is commonly used to relieve…pain, skin, joint, digestive issues asn [sic] well as neurological issues."

From your website at www.shop.watershed.net:

o **Dr. Bob's Naturals Magtei:** "Magnesium repairs the damaged synapses of the brain, which is the cause of the various types of neurological and brain-related diseases."

o **Dr. Bob's Naturals Tulsi-Holy Basil Extract Capsules:**
  o "Regulates Insulin Levels to Help Balance Blood Sugar"
  o "Contains Antibacterial, Antifungal Properties"
  o "Holy Basil…regulates insulin levels…. It has Antibacterial, anti-fungal, and anti-inflammatory properties."

o **Dr. Bob's Naturals Milk Thistle Liver Support:**
  o "Milk Thistle ….is…anti-inflammatory"
  o "Benefits:
    ▪ Reduces Cholesterol
    ▪ Anti-allergic
    ▪ Asthma Support
    ▪ Reduces Insulin Resistance
    ▪ Anti-inflammatory"

o **Dr. Bob's Naturals Stone Breaker Powder:** "Stone Breaker (Chanca Piedra) has been used by the indigenous peoples of the Amazon Forests for centuries to treat and remove of [sic] kidney and gall stones. It helps dissolve the stones so they can be eliminated from the body. Chanca Piedra interferes with stone formation by relaxing urinary passages so small stones are more easily passed. It can be used in conjunction with lithotripsy, a shock wave procedure that fragments stones"

o **Dr. Bob's Naturals Parasite Killer Bundle:** "Six Products that kill viruses, bacteria, yeast, mold, and fungus in the bloodstream and digestive tract. Silver: Kills viruses, bacteria, yeast, mold, and fungus in the bloodstream. (16 oz) Bismuth: Kills bacteria in the digestive tract. (16 oz) Papaya Seed Powder: Parasite removal. Parasite Killer BlendTM: Kills viruses, bacteria, yeast, and fungus in the digestive tract. Dissolve Bioactive Silicate: Removes biofilm and nano-bacteria from the arteries and body. Proferment [sic]."

o **Dr. Bob's Naturals Parasite Killer Bundle MINI:** "Dr. Bob's Parasite Killer Bundle MINI is identical to Dr. Bob's Parasite Killer Bundle except the bottles are 2 oz (NOT 16 oz). Six Products that kill viruses, bacteria, yeast, mold, and fungus in the bloodstream and digestive tract. Silver: Kills viruses, bacteria, yeast, mold, and fungus in the bloodstream. (2 oz) Bismuth: Kills bacteria in the digestive tract. (2 oz) Papaya Seed Powder: Parasite removal. Parasite Killer Blend$^{TM}$: Kills viruses, bacteria, yeast, mold, and fungus in the digestive tract. Dissolve Bioactive Silicate: Removes biofilm and nano-bacteria from the arteries and body. Preferment – Probiotic."

o **Dr. Bob's Naturals Parasite Killer:** "Dr. Bob's Parasite Killer is formulated with parasiticidal, anti-fungal, anti-viral, and antibacterial ingredients with the intention of killing everything in the digestive tract. Once that is accomplished then the next step is to reintroduce probiotics, the friendly bacteria that.... keep our digestive tract free of parasites and unhealthy bacteria."

From your YouTube Channel:

o **A video titled "Amazing herb – Little Known: YEW Tree with Taxane" [an ingredient in Dr. Bob's Naturals Yew VeggieCaps]** at https://www.youtube.com/watch?v=kudldIcMIXU, in which the URL for your website www.watershed.net appears onscreen during the video and you state: "Very powerful anti-cancer properties...used in conjunction with chemotherapy and other cancer treatments, but not only does it have anti-cancer properties it also has a lot of other properties as well...the way that Taxane works in the body to fight cancer is it causes cell apoptosis in cancer cells. So it doesn't allow the cancer cell to replicate.... Is also very powerful anti-inflammatory...on top of being anti-cancer.... you take two or three capsules a day as a maintenance dosage, or if you have a serious health challenge maybe you got cancer or something, you're going to triple that dosage and do three of those three times a day ...."

o Your description of the video says, "Buy Yew Capsules Here" and hyperlinks to the Dr. Bob's Naturals Yew VeggieCaps product page of your website, https://shop.watershed.net/index.php/herbal-extracts/immune-system-builder/yew/yewcaps.html, and also contains the following written statements:

    ⊡ "Anti-inflammatory"

    ⊡ "Taxane a chemical substance derived from a yew tree of the Pacific Coast: used yew tree experimentally as a drug in the treatment of cancer. It is derived from Yew trees – Taxus Brevafolia – and bushes and used to kill dividing cells, especially tumor cells."

    ⊡ "The taxanes are mitotic inhibitors, meaning that they inhibit tumors primarily by preventing cells from entering mitosis, a process of cell division. The taxanes accomplish this by inhibiting microtubule polymerization. In addition, taxanes appear to stimulate apoptosis, or programmed cell death, which is often inhibited in cancer cells."

o **A video titled "Gingko Biloba Benefits" [an ingredient in Dr. Bob's Naturals Gingko Magic]** at https://www.youtube.com/watch?v=6SstxpuWwZg, in which the URL for your website www.watershed.net appears onscreen during the video and you state: "It's used for Alzheimer's, memory loss ....Good for...ADHD ....It also helps with...arthritis....It also helps with...asthma...it is opening up those bronchial tubes and increasing circulation to the lungs....gingko biloba world's most famous herb use for all your...fibromyalgia...

increasing that circulation to relieve that pain...be good for MS [multiple sclerosis] as well for that reason...."

o During the video, the following written statements appear as on-screen text:

- "Reduces Risk for Dementia/Alzheimer's"
- "Helps fight Fibromyalgia"
- "Helps fight Headaches/Migraines"

o Your description of the video says, "Buy Our Ginkgo Veggie Capsules Here" and hyperlinks to your website https://shop.watershed.net/index.php/herbal-extracts/brainhealth/gingko-biloba/ginkgo-veggiecaps.html, and also contains the following written statements:

- "Helps fight Headaches/Migraines"
- "Reduces Memory Loss"
- "Helps fight Muscle and Nerve Pain"

o **A video titled "Increase your Synaptic Activity with Magnesium for the Brain" [an ingredient in Dr. Bob's Naturals Magtein]** at https://www.youtube.com/watch?v=AoZv9ESLFpY, in which the URL for your website www.watershed.net appears onscreen during the video and you state: "[m]agnesium...a lot of people have heart attacks just because they are short on magnesium....there's another type of magnesium that gets to your brain....they started autopsying Alzheimer's patients after they passed away and stupid monkeys and smart monkeys and they found the people with the Alzheimer's and stupid monkeys had absolutely no magnesium in the brain and smart monkeys were full of magnesium in the brain. Well what does that tell you? Magnesium is really needed in the brain it increases synaptic activity and actually increases synapses themselves in the brain."

o During the video, the following written statement appears as on-screen text:

- "6 grams (2 tsp or 12 capsules) per day if you have memory issues or DEMENTIA".

o Your description of the video hyperlinks to the Dr. Bob Naturals Magtein product page of your website, https://shop.watershed.net/index.php/supplements/magtein/magtein-miracle-magnesium-for-the-brain-veggie-capsules.html, and contains the following written statements:

- "Magnesium repairs the damaged synapses of the brain."
- "Decreases the Onset Of Memory Loss"
- "Repairs Damaged Synapses"

From your product labels:

o **Dr. Bob's Naturals Ginkgo Magic:** "Ginkgo is an anti-inflammatory"

o **Dr. Bob's Naturals Yew VeggieCaps:** "The Yew tree (taxus brevifolia) contains a substance called taxane. Taxanes . . . prevent harmful cells from entering mitosis. Taxane has been used in chemotherapy for many years."

o "Anti-Inflammatory"

o **Dr. Bob's Naturals Parasite Killer:** "Dr. Bob's Parasite Killer is formulated with parasiticidal, anti-fungal, anti-viral and anti-bacterial ingredients with the intention of killing everything in the digestive tract."

o **Dr. Bob's Naturals Spirulina:** "Helps Balance Blood Sugar"

o **Dr. Bob's Naturals Chlorella:** "Helps Balance Blood Sugar"

o **Dr. Bob's Holy Basil Extract:** "Tulsi, or Holy Basil.... regulates insulin helping balance blood sugar levels in the body. It also contains antibacterial, antifungal, and anti-inflammatory properties."

o **Dr. Bob's Naturals Milk Thistle Liver Support:** "Milk Thistle .... is also...anti-inflammatory ...."
  o "Reduces Cholesterol
  o Reduces Insulin Resistance
  o Anti-Inflammatory
  o Asthma Support"

o **Dr. Bob's Naturals Stone Breaker Capsules:** "Gall and Kidney Stone Removal"
  o "Stone Breaker (Chanca Piedra) has been used...to treat and remove kidney and gall stones. It helps dissolve the stones .... Chanca Piedra interferes with stone formation by relaxing urinary passages so small stones are more easily passed."

Your products are not generally recognized as safe and effective for the above referenced uses and, therefore, the products are "new drugs" under section 201(p) of the Act [21 U.S.C. § 321(p)]. With certain exceptions not applicable here, new drugs may not be legally introduced or delivered for introduction into interstate commerce without prior approval from FDA, as described in sections 301(d) and 505(a) of the Act [21 U.S.C. §§ 331(d), 355(a)]. FDA approves a new drug on the basis of scientific data and information demonstrating that the drug is safe and effective.

A drug is misbranded under section 502(f)(1) of the Act [21 U.S.C. § 352(f)(1)] if the drug fails to bear adequate directions for its intended use(s). "Adequate directions for use" means directions under which a layperson can use a drug safely and for the purposes for which it is intended (21 CFR 201.5). Prescription drugs, as defined in section 503(b)(1)(A) of the Act [21 U.S.C. § 353(b)(1)(A)], can only be used safely at the direction, and under the supervision, of a licensed practitioner.

Your Dr. Bob's Naturals Yew VeggieCaps, Gingko Magic, Milk Thistle Liver Support, Stone Breaker Capsules and Powder, and Magtein products are intended for treatment of one or more diseases that are not amenable to self-diagnosis or treatment without the supervision of a licensed practitioner. Therefore, it is impossible to write adequate directions for a layperson to use your products safely for their intended purposes. Accordingly, your Dr. Bob's Naturals Yew VeggieCaps, Gingko Magic, Milk Thistle Liver Support, Stone Breaker Capsules and Powder, and Magtein products are misbranded under section 502(f)(1) of the Act [21 U.S.C. § 352(f)(1)]. The introduction or delivery for introduction into interstate commerce of these misbranded drugs violates section 301(a) of the Act [21 U.S.C. § 331(a)].

**Adulterated Dietary Supplements**

The inspection revealed serious violations of the FDA's regulations for Current Good Manufacturing Practice (CGMP) in Manufacturing, Packaging, Labeling, or Holding Operations for Dietary Supplements, under Title 21, Code of Federal Regulations (CFR), Part 111 (21 CFR 111). Based on these violations, your Dr. Bob's Naturals NootriTonic ULTRA, Dr. Bob's Naturals Parasite Killer, and Raw Food World Sleep Deep Powder products are adulterated within the meaning of section 402(g)(1) of the Act [21 U.S.C. § 342(g)(1)] in that they were prepared, packed, or held under conditions that do not meet CGMP requirements for dietary supplements.

The violations include the following:

1. You failed to establish specifications required under 21 CFR 111.70. Specifically:
a. You failed to establish component specifications that are necessary to ensure that specifications for the purity, strength, and composition of dietary supplements manufactured using the components are met, as required by 21 CFR 111.70(b)(2). For example, Chanca Piedra is an ingredient in your Dr. Bob's Naturals Parasite Killer, but you did not establish such component specifications for Chanca Piedra. Likewise, Yuan Zhi

is an ingredient in your Raw Food World Sleep Deep powder, but you did not establish such component specifications for Yuan Zhi.

b. You failed to establish specifications for each dietary supplement that you manufacture for the identity, purity, strength, and composition of the finished batch of the dietary supplement, and for limits on those types of contamination that may adulterate, or lead to the adulteration of, the finished batch of the dietary supplement to ensure the quality of the dietary supplement, as required by 21 CFR 111.70(e). For example, you did not establish any finished product specifications for Dr. Bob's Naturals NootriTonic ULTRA, Raw Food World Sleep Deep Powder, and Dr. Bob's Naturals Parasite Killer.

Once you have established specifications required under 21 CFR 111.70, you must determine whether the specifications are met, as required by 21 CFR 111.75. You must also ensure that the tests and examinations that you use to determine whether the specifications are met are appropriate, scientifically valid methods, as required by 21 CFR 111.75(h)(1), and you must make and keep records of the specifications established, as required by 21 CFR 111.95(b)(1).

We have reviewed your responses, dated August 12 and August 23, 2022, in which you state you will establish specifications for the purity, strength, and composition of each of the ingredients used in your supplements, and that you will develop procedures to demonstrate that the products you manufacture meet your specifications. We also reviewed your January 22, 2023, response in which you state you have overhauled and improved your document protocols. However, you did not provide any supporting documentation, such as copies of your specifications. We are unable to evaluate the adequacy of your corrective action, because you did not provide documentation to support that you have established component and finished product specifications.

2. You must prepare and follow a master manufacturing record (MMR) for each unique formulation of dietary supplement that you manufacture, and for each batch size, to ensure uniformity in the finished batch from batch to batch, as required by 21 CFR 111.205(a), and the MMR must include the information required under 21 CFR 111.210. The MMRs used in the manufacture of your Dr. Bob's Naturals NootriTonic ULTRA, Raw Food World Sleep Deep Powder, and Dr. Bob's Naturals Parasite Killer, failed to include the following information, as required by 21 CFR 111.210:

a. The identity and weight or measure of each dietary ingredient that will be declared on the Supplement Facts label [21 CFR 111.210(d)].

b. A statement of theoretical yield of a manufactured dietary supplement at each point, step, or stage of the manufacturing process where control is needed to ensure the quality of the dietary supplement, and the expected yield when you finish manufacturing the dietary supplement, including the maximum and minimum percentages of theoretical yield beyond which a deviation investigation of a batch is necessary and material review is conducted and disposition decision is made [21 CFR 111.210(f)].

c. A description of packaging and a representative label, or a cross-reference to the physical location of the actual or representative label [21 CFR 111.210(g)].

d. Written instructions, including specifications for each step, point or stage in the manufacturing process where control is necessary to ensure the quality of the dietary supplement and that the dietary supplement is packaged and labeled as specified in the MMR [21 CFR 111.210(h)(1)].

e. Procedures for sampling and a cross-reference to procedures for tests or examinations [21 CFR 111.210(h)(2)].

f. Written instructions, including specific actions necessary to perform and verify points, steps, or stages in the manufacturing process where control is necessary to ensure the quality of the dietary supplement and that the dietary supplement is packaged and labeled as specified in the MMR [21 CFR 111.210(h)(3)].

g. Corrective action plans for use when a specification is not met [21 CFR 111.210(h)(5)].

In addition, the MMRs for Dr. Bob's Naturals Parasite Killer and Raw Food World Sleep Deep Powder also do not include the strength, concentration, weight, or measure of each dietary ingredient for each batch size [21 CFR 111.210(a)] and an accurate statement of the weight or measure of each component to be used [21 CFR 111.210(c)], nor does the MMR for Dr. Bob's Naturals Parasite Killer include a complete list of components to be used [21 CFR 111.210(b)].

We have reviewed your responses dated August 12, 2022, and August 23, 2022, in which you state you will develop written instructions and include them with your MMRs to reflect your procedures in greater detail, including quality control points, manufacturing stages, reserve collection and storage. You also state that you will implement in writing detailed manufacturing procedures, including which utensils are used, and how they should be cleaned and properly stored. We also reviewed your January 22, 2023, response in which you state you have overhauled and improved your document protocols. However, you did not provide any supporting documentation, such as copies of revised MMRs for your products. We are unable to evaluate the adequacy of your corrective action, because you did not provide documentation to support that you revised your MMRs and that they are compliant with 21 CFR 111.210.

3. You must prepare a batch production record (BPR) every time you manufactured a batch of dietary supplement, as required by 21 CFR 111.255(a), and the BPR must include the information required under 21 CFR 111.260. The BPRs you provided for your Raw Food World Sleep Deep (Lots 8070, 8079), Dr. Bob's Naturals Parasite Killer (Lots 7036, 7087), and Dr. Bob's Naturals NootriTonic ULTRA (Lots 8067, 8044) dietary supplements lacked the following information that must be included in a BPR, as required by 21 CFR 111.260:

a. The identity of equipment and processing lines used in producing the batch [21 CFR 111.260(b)].
b. The date and time of maintenance, cleaning and sanitizing of the equipment and processing lines used in producing the batch, or a cross-reference to records where this information is retained [21 CFR 111.260(c)].
c. The unique identifier that you assigned to each component, packaging, and label used [21 CFR 111.260(d)].
d. The identity and weight or measure of each component used [21 CFR 111.260(e)].
e. A statement of the actual yield or statement of the percentage of theoretical yield at appropriate phases of processing [21 CFR 111.260(f)].
f. The actual results obtained during any monitoring operations [21 CFR 111.260(g)].
g. The results of any testing or examination performed during the batch production, or a cross-reference to such results [21 CFR 111.260(h)].
h. Documentation that the finished dietary supplement meets specifications established in accordance with 21 CFR 111.70(e) and (g) [21 CFR 111.260(i)].
i. Documentation, at the time of performance, of the manufacture of the batch, including the information required under 21 CFR 111.260(j) [21 CFR 111.260(j)].
j. Documentation, at the time of performance, of packaging and labeling operations, including the information required under 21 CFR 111.260(k) [21 CFR 111.260(k)].
k. Documentation at the time of performance, that quality control personnel reviewed the batch production record, and approved and released, or rejected, the batch for distribution [21 CFR 111.260(l)(3)].
l. Documentation at the time of performance of any required material review and disposition decision [21 CFR 111.260(m)].

We have reviewed your responses, dated August 12 and August 23, 2022, in which you state you will keep detailed cleaning and sanitation records for each production run of any supplement you are manufacturing,

that cleaning procedures in sanitation records will become part of all your SOPs, and that each batch record will reflect what cleaning and sanitation was done before and after the batch was manufactured. We also reviewed your January 22, 2023, response in which you state you have overhauled and improved your document protocols. However, you did not provide any supporting documentation, such as copies of BPRs for your products. We are unable to evaluate the adequacy of your corrective action, because you did not provide documentation to support that you have revised your BPRs and that they are compliant with 21 CFR 111.260.

4. You failed to maintain your physical plant in a clean and sanitary condition, as required by 21 CFR 111.15(b)(1). Specifically:

a. In your repacking room, there was green residue built up on a ceiling vent for the A/C unit, on the protective grating on a ceiling vent, and on various ceiling tiles. Further, your "Weekly Cleaning Procedure" includes wiping down walls and vents but does not include instructions for cleaning the ceiling tiles.
b. In your new packing room, there were several multicolored stains on the walls of the room that were in direct contact with the table used for manufacturing powdered and capsuled dietary supplements. There was dark brown residue built up on a ceiling vent for the A/C unit. You stated during the inspection that this room is used to repack and manufacture dietary supplements such as Dr. Bob's Naturals Parasite Killer and to repack food products such as your Empress Blend mix, which contains raw pistachios. You provided two cleaning procedures for this room during the inspection, neither of which contains instructions for preventing allergen cross-contact, nor were you able to provide evidence of implementation of either of these procedures.
c. In the warehouse our investigator observed a lawn mower, a snow blower, three orange gas containers, four bags of weed killer (one of which was opened), two canisters of pest control spray, two containers of engine/motor oil, and assorted lawn and gardening equipment that were directly touching or immediately surrounding a number of your products.

We have reviewed your responses and acknowledge that in your August 23, 2022, response you indicated that the green and brown residues are caused when you do not change filters often enough, and that you will change the filters in the rooftop/heating and cooling unit.

In addition, you stated that you cleaned the wall that had the stain on it. You also stated that all gasoline, oil, and other petroleum products have been removed from the building entirely and that you have hired a contractor to maintain the outside of the facility. However, you did not provide evidence of corrective actions, such as photographs of replaced filters, cleaned ceiling tiles and vents, and the warehouse. Further, your response did not indicate that you would update your cleaning and/or maintenance procedures to include cleaning ceiling tiles and a filter replacement schedule, nor did you provide a copy of updated cleaning and/or maintenance procedures. Therefore, we are unable to evaluate the adequacy of your corrective action.

5. Your quality control personnel did not approve or reject written procedures that may affect the identity, purity, strength, or composition of a dietary supplement, as required by 21 CFR 111.105(a). Specifically, during the inspection, we reviewed your "Production Quality Control SOP," "Incoming Quality Control (IQC) SOP," "Finished Batches Meeting Product Specifications SOP," and none of these procedures included a signature from your quality control personnel. Likewise, your quality control personnel did not approve all MMRs, as required by 21 CFR 111.123(a)(1). Specifically during the inspection, we reviewed the MMRs for Dr. Bob's Naturals NootriTonic ULTRA (50g), Raw Food World Sleep Deep Powder (2 oz.), and Dr. Bob's Naturals Parasite Killer (60 capsules), and none of these MMRs included a signature from your quality control personnel.

We have reviewed your responses dated August 12, 2022, and August 23, 2022, in which you state you will

implement a more detailed quality control protocol and that you are working with a consultant to make the necessary corrections in your current system. We also reviewed your January 22, 2023, response in which you state you have overhauled and improved your document protocols. We are unable to evaluate the adequacy of your corrective action, because you did not provide documentation to support that your quality control unit is reviewing and approving your written procedures and master manufacturing records.

**Misbranded Dietary Supplements**

Even if your Dr. Bob's Naturals Ginkgo Magic, Yew VeggieCaps, and Parasite Killer products were not unapproved new drugs, the products would be misbranded under section 403 of the Act [21 U.S.C. 343] because they do not comply with the labeling requirements for dietary supplements. Additionally, your Dr. Bob's Naturals NootriTonic ULTRA and The Raw Food World Sleep Deep Powder products also do not comply with the labeling requirements for dietary supplements. Specifically, we identified the following:

1. Your Dr. Bob's Naturals Ginkgo Magic, Dr. Bob's Naturals Yew VeggieCaps, Dr. Bob's Naturals NootriTonic ULTRA, Dr. Bob's Naturals Parasite Killer, and The Raw Food World Sleep Deep Powder products are each misbranded within the meaning of section 403(e)(1) of the Act [21 U.S.C. § 343(e)(1)] in that the labels fail to list the name and place of business of the manufacturer, packer, or distributor, in accordance with 21 CFR 101.5.

2. Your Dr. Bob's Naturals Ginkgo Magic, Dr. Bob's Naturals Yew VeggieCaps, Dr. Bob's Naturals NootriTonic ULTRA, Dr. Bob's Naturals Parasite Killer, and The Raw Food World Sleep Deep Powder products are misbranded within the meaning of section 403(s)(2)(B) of the Act [21 U.S.C. § 343(s)(2)(B)] because they do not include a statement of identity as a "dietary supplement," as required by 21 CFR 101.3(g).

3. Your Dr. Bob's Naturals Yew VeggieCaps, Dr. Bob's Naturals Parasite Killer, Dr. Bob's Naturals NootriTonic ULTRA, and The Raw Food World Sleep Deep Powder products are misbranded within the meaning of section 403(i)(2) of the Act [21 U.S.C. § 343(i)(2)] in that the product labels fail to declare all common or usual names of each ingredient used, as required by 21 CFR 101.36 and 21 CFR 101.4. Specifically:

a. The Dr. Bob's Naturals Yew VeggieCaps and Dr. Bob's Naturals Parasite Killer products are manufactured into capsules, but the label fails to declare the ingredients that form the capsule itself.
b. The Dr. Bob's Naturals Yew VeggieCaps product label fails to declare the standardized common name of Pacific Yew for the declared dietary ingredient *Taxus brevifolia* ("Yew powder"), as listed in the reference Herbs of Commerce.
c. The Raw Food World Sleep Deep Powder product label fails to declare the standardized common name of polygala for the declared dietary ingredient *Yuan zhi*. Additionally, the product label fails to declare the standardized common name of oriental arborvitae for the declared dietary ingredient bai zi ren (*Platycladus orientalis*).
d. The Dr. Bob's Naturals NootriTonic ULTRA product label fails to declare the common or usual name for alpha-GPC, fruit punch flavor, and P5P.
e. The Dr. Bob's Parasite Killer fails to declare the standardized common name for the ingredients "Mimosa Pudica" and "Chandra Piedra" as listed in Herbs of Commerce. Mimosa Pudica is not a standardized common name, but an other common name. In addition, we note that your website indicates that "Chandra Piedra' is an unidentified species of *Phyllanthus*.

4. The Raw Food World Sleep Deep Powder product is misbranded within the meaning of section 403(y) of the Act [21 U.S.C. § 343(y)] in that the product label fails to bear a domestic address or domestic phone number through which the responsible person (as described in section 761) may receive a report of a serious adverse

event with such dietary supplement.

5. Your Dr. Bob's Naturals Ginkgo Magic, Dr. Bob's Naturals Yew VeggieCaps, Dr. Bob's Naturals NootriTonic ULTRA, Dr. Bob's Naturals Parasite Killer, and The Raw Food World Sleep Deep Powder products are misbranded within the meaning of section 403(s)(2)(C) of the Act [21 U.S.C. § 343(s)(2)(C)] because the labels fail to identify the part of the plant (e.g., root, leaves) from which each botanical dietary ingredient in the products are derived, as required by 21 CFR 101.4(h)(1). Specifically:

a. The Dr. Bob's Naturals Ginkgo Magic product label fails to include the part of the plant from which the Ginkgo biloba extract is derived.
b. The Dr. Bob's Naturals Yew VeggieCaps product label fails to include the part of the plant from which the Yew powder is derived.
c. The Dr. Bob's Naturals Parasite Killer product label fails to include the part of the plant from which its botanical ingredients are derived, including clove powder, wormwood, guarana, bearberry, epazote, and "mimosa pudica."
d. The Raw Food World Sleep Deep Powder product label fails to declare in English the part of the plant from which the bai zi ren and yuan zhi are derived.

6. Your Dr. Bob's Naturals Ginkgo Magic, Dr. Bob's Naturals Yew VeggieCaps, and Dr. Bob's Naturals Parasite Killer products are misbranded within the meaning of section 403(q)(1)(A) [21 U.S.C. § 343(q)(1)(A)] because the serving size declared on the label is incorrect. Serving size for a dietary supplement is the maximum amount consumed per eating occasion as recommended on the product label as defined in 21 CFR 101.9(b) and 21 CFR 101.12(b) Table 2. Specifically:

a. The dosage amount listed on Dr. Bob's Naturals Ginkgo Magic product label suggest the consumer take a "maintenance dosage" of 2-4 capsules daily or a "health challenge" dosage of 5-8 capsules daily, but the serving size listed is 2 capsules.
b. The dosage amount listed on Dr. Bob's Naturals Yew VeggieCaps product label suggests the consumer take a "maintenance dosage" of 2 capsules daily or a "health challenge" dosage of 5-8 capsules daily, but the serving size listed is 2 capsules.
c. The dosage amount listed on Dr. Bob's Naturals Parasite Killer product label indicates two to four capsules on an empty stomach. Furthermore, the serving size of 750 mg in the Supplement Facts label does not correlate with the dosage declaration.

7. Your Dr. Bob's Naturals Ginkgo Magic, Dr. Bob's Naturals Yew VeggieCaps, Dr. Bob's Naturals NootriTonic ULTRA, Dr. Bob's Naturals Parasite Killer, and The Raw Food World Sleep Deep Powder products are misbranded within the meaning of sections 403(q)(5)(F) and 403(q)(1)(A) of the Act [21 U.S.C. §§ 343(q)(1)(A) and (q)(5)(F)] in that the presentation of the nutrition information on the labeling of your products does not comply with 21 CFR 101.36.
Specifically:

a. Dr. Bob's Naturals Ginkgo Magic:
  i. The product label lists its dietary ingredient, ginkgo biloba extract, outside the nutrition label of the supplement facts label. This dietary ingredient should be listed inside the supplement facts label along with its quantitative amount by weight per serving in metric units in accordance with 21 CFR 101.36(b)(3).
  ii. The product label declares nutrients with quantitative amounts of zero. Any (b)(2)-dietary ingredients not present, or in amount that can be declared as zero in 21 CFR 101.9(c), shall not be declared, in accordance with 21 CFR 101.36(b)(2).

b. Dr. Bob's Naturals Yew VeggieCaps

 i. The product label lists its dietary ingredient, "yew powder", outside the nutrition label of the supplement facts label. This dietary ingredient should be listed inside the supplement facts label along with its quantitative amount by weight per serving in metric units in accordance with 21 CFR 101.36(b)(3).

 ii. The product label contains nutrients which may be declared as zero. Any (b)(2)-dietary ingredients not present, or in amount that can be declared as zero in 21 CFR 101.9(c), shall not be declared, in accordance with 21 CFR 101.36(b)(2).

c. Dr. Bob's Naturals NootriTonic ULTRA

 i. The product label lists dietary ingredients, including alpha-GPC, tyrosine, phosphatidylserine, theanine, carnitine, and P5P, outside the nutrition label of the supplement facts label. These dietary ingredients should be listed inside the supplement facts label along with each dietary ingredient's quantitative amount by weight per serving in metric units in accordance with 21 CFR 101.36(b)(3).

 ii. The product label declares dietary ingredients with quantitative amounts of zero. Any (b)(2)-dietary ingredients not present, or in amounts that can be declared as zero in 21 CFR 101.9(c), shall not be declared, in accordance with 21 CFR 101.36(b)(2).

 iii. The serving size for the product must be expressed in common household measures as set forth in 21 CFR 101.9(b) and must be followed by the equivalent metric quantity in parenthesis (fluids in milliliters and all other foods in grams).

 iv. The title, "Supplement Facts," is not in bolded font nor set at full width of the nutrition label in accordance with 21 CFR 101.36(e)(1).

d. Dr. Bob's Naturals Parasite Killer product label lists dietary ingredients, including papaya seed, golden seal leaf, clove powder, wormwood, guarana, bearberry, epazote, pumpkin seed, grapefruit seed, "mimosa pudica," cayenne pepper, and black walnut hull, outside the nutrition label of the supplement facts label. These dietary ingredients should be listed inside the supplement facts label along with each dietary ingredient's quantitative amount by weight per serving in metric units in accordance with 21 CFR 101.36(b)(3).

e. The Raw Food World Sleep Deep Powder product label lists dietary ingredients, including "bai zi ren" and "yuan zhi," outside the nutrition label of the supplement facts label. These dietary ingredients should be listed as the standardized common name of each dietary ingredient inside the supplement facts label along with its quantitative amount by weight per serving in metric units in accordance with 21 CFR 101.36(b)(3).

f. Dr. Bob's Naturals Ginkgo Magic, Dr. Bob's Naturals Yew VeggieCaps, and Dr. Bob's Naturals NootriTonic ULTRA products Supplement Facts labels each declare a statement referencing a 2,000 calorie diet. This statement is only permitted when the percent of Daily Value is declared for total fat, saturated fat, total carbohydrate, dietary fiber, or protein as required by 21 CFR 101.9(c) and 21 CFR 101.36(b)(2)(iii)(D). Furthermore, for the Dr. Bob's Naturals Yew VeggieCaps there is no provision for the statement "Not a significant source of vitamin D, calcium, iron, and ..." in the Supplement Facts label.

8. Your Dr. Bob's Naturals NootriTonic ULTRA product is misbranded within the meaning of section 403(e)(2) of the Act [21 U.S.C. § 343(e)(2)] because the label fails to declare the net quantity of contents on the principal display panel as required by 21 CFR 101.7. In accordance with 21 CFR 101.7(b)(1), statements of weight shall be in terms of avoirdupois pound and ounce. The net quantity of contents statement, expressed in terms of weight, must specify both metric (i.e., grams or kilograms) and U.S. Customary System (i.e., ounces or pounds), to comply with 21 CFR 101.7 and 15 U.S.C. 1453(a)(2) of the Fair Packaging and Labeling Act.

9. The Dr. Bob's Naturals Parasite Killer product is misbranded within the meaning of section 403(w) of the

Act [21 U.S.C. § 343(w)] in that the finished product label lists black walnut in the ingredients statement while the "Contains" statement declares that no tree nut is present in the product, which is not in accordance with section 403(w) of the Act.

Section 201(qq) of the Act, 21 U.S.C. 321(qq), defines a major food allergen as milk, egg, fish, Crustacean shellfish, tree nuts, wheat, peanuts, and soybeans, as well as any food ingredient that contains protein derived from one of these foods, with certain exceptions, e.g., highly refined oils derived from a major food allergen. A food is misbranded if it is not a raw agricultural commodity and it is, or it contains, an ingredient that bears or contains, a major food allergen, unless either:

- The word "Contains," followed by the name of the food source from which the major food allergen is derived, is printed immediately after or is adjacent to the list of ingredients [section 403(w)(1)(A) of the Act, 21 U.S.C. § 343(w)(1)(A)]; or

- The common or usual name of the major food allergen in the list of ingredients is followed in parentheses by the name of the food source from which the major food allergen is derived, except that the name of the food source is not required when either the common or usual name of the ingredient uses the name of the food source or the name of the food source appears elsewhere in the ingredient list (unless the name of the food source that appears elsewhere in the ingredient list appears as part of the name of an ingredient that is not a major food allergen) [section 403(w)(1)(B) of the Act, 21 U.S.C. § 343(w)(1)(B)].

10. Your Dr. Bob's Naturals Ginkgo Magic, Dr. Bob's Naturals NootriTonic ULTRA, and The Raw Food World Sleep Deep Powder are each misbranded withing the meaning of section 403(r)(6) [21 U.S.C. § 343(r)(6)] in that the products make structure function claims but fail to bear the required dietary supplement disclaimer in accordance with 21 CFR 101.93(b).

This letter is not intended to be an all-inclusive statement of violations that may exist in connection with your products. You are responsible for investigating and determining the causes of any violations and for preventing their recurrence or the occurrence of other violations. It is your responsibility to ensure that your firm complies with all requirements of federal law, including FDA regulations.

We also have the following comments:

1. You may confirm the identity of other components (that are not dietary ingredients) by relying on a certificate of analysis from the supplier of the component that you receive provided that you:
   • First establish component specifications, as required by 21 CFR 111.70(b).
   • Meet the requirements of 21 CFR 111.75(a)(2)(ii).

Your Dr. Bob's Naturals NootriTonic ULTRA product label declares "stevia' in the Ingredient list. If you are using highly purified steviol glycosides obtained from stevia leaves in your product, please note that "stevia" refers to the botanical and is not the common or usual name of these highly purified ingredients. Rather, the common or usual name for highly purified steviol glycosides depends on the ingredient composition. If the sweetener is purified to contain 95 percent or more of a single steviol glycoside, the specific name of that single steviol glycoside is the common or usual name. For example, the name "rebaudioside A" should be used for ingredients with 95% or more rebaudioside A; the name "stevioside" should be used for ingredients with 95% or more stevioside. If the sweetener is purified to contain 95 percent or more of a mixture of two or more steviol glycosides, the name "steviol glycosides" would be the common or usual name.

2. Your Raw Food World Sleep Deep Powder product displays text in pinyin; pinyin is considered a foreign language. A product is misbranded if the product label contains information in two languages but does not

repeat all the required label information (including the nutrition information) in both languages. [section 403(f) of the Act [21 U.S.C. § 343(f)] and 21 CFR 101.15(c)].

This letter notifies you of our concerns and provides you an opportunity to address them. Failure to do so may result in legal action including, without limitation, seizure and injunction.

Please notify FDA in writing, within 15 working days of receipt of this letter, of the specific steps you have taken to address any violations. Include an explanation of each step being taken to prevent the recurrence of violations, as well as copies of related documentation. If you cannot complete corrective actions within 15 working days, state the reason for the delay and the time within which you will do so. If you believe that your products are not in violation of the Act, include your reasoning and any supporting information for our consideration.

Your reply should be addressed to the U.S. Food and Drug Administration; Attn: Lauren Crivellone, Compliance Officer, via email at ORAHAFEAST6FirmResponses@fda.hhs.gov or at 550 W. Jackson Blvd, Chicago, IL 60661. You may reach Ms. Crivellone at 312-206-5264 or via email at Lauren.Crivellone@fda.hhs.gov if you have any questions about this matter.

Sincerely,
/S/

Lawrence Stringer
Acting Program Division Director
Office of Human and Animal Food
Operations Division East 6

---

⊖ More Warning Letters (/inspections-compliance-enforcement-and-criminal-investigations/compliance-actions-and-activities/warning-letters)

# EXHIBIT 7

WARNING LETTER

# Moorish Science Temple, The Divine and National Movement of North America, Inc; #13 The Moorish American National Republic dba Moor Herbs, Inc.

### MARCS-CMS 655674 — AUGUST 01, 2023

**Delivery Method:**

VIA EMAIL AND UNITED PARCEL SERVICE

**Product:**

Drugs

**Recipient:**

Maria S. LeMay-Bey, Owner

Isaiah Orton-Bey, Owner

Moorish Science Temple, The Divine and National Movement of North America, Inc; #13 The Moorish American National Republic dba Moor Herbs, Inc.

16136 W. 7 Mile Road
Detroit, MI 48235
United States

✉ Moorherbs13@gmail.com (mailto:Moorherbs13@gmail.com)

**Issuing Office:**

Division of Human and Animal Food Operations East VI

United States

## WARNING LETTER
### CMS Case #655674

August 1, 2023

Dear Isaiah Orton-Bey and Maria LeMay-Bey:

This letter is to advise you that the U.S. Food and Drug Administration (FDA) has conducted an inspection of your manufacturing facility at 16136 W. 7 Mile Road, Livonia, MI 48235-2903 from February 13, 2023 to March 16, 2023. Additionally, FDA reviewed your website at https://moorherbs.com in May 2023. The inspection and our review of your website revealed serious violations of the Federal Food, Drug, and Cosmetic Act (the FD&C Act) and FDA regulations. You can find the FD&C Act and FDA regulations through links on

FDA's home page at www.fda.gov.

At the close of the inspection, our investigator provided you with a Form FDA 483, Inspectional Observations (FDA 483). We received your response to the FDA 483 on April 3, 2023. We address your response below.

**Unapproved New Drugs and Misbranded Drugs**

FDA reviewed your website, https://moorherbs.com, in May 2023 and has determined that you take orders there for the products "Full Body Antibiotic" (also referred to as "Antibiotic, Full Body"), "Anti-Viral," "Appendix Support," "Blood Pressure" (also referred to as "Blood Pressure Normalizer"), "Brain Tune-Up," "Cardiovascular System," "Headache & Pain Relief," "Healthy Mommy Healthy Baby," "Quit Smoking," "HyperThyroidism" (also referred to as "HyperThyroid Support"), "HypoThyroidism" (also referred to as "HypoThyroid Support"), "Mucus Release," "Parasite Cleanse," "ResErection Extra Strength w/Yohimbe Bark," "Tumor Release" (also referred to as "Tumor & Cyst Support"), "Un-Vax," "Venereal Defense," "Womb Care Cramp Relief & Fibroid Release" (also referred to as "Womb Care: Fibroid and Tumor Release"), and "Lungs & Respiratory." The claims on your website establish that the products are drugs under section 201(g)(1)(B) of the FD&C Act [21 U.S.C. 321(g)(1)(B)] because they are intended for use in the cure, mitigation, treatment, or prevention of disease.

Examples of some of the website claims that provide evidence that your products are intended for use as drugs include:

<u>"Full Body Antibiotic" (also referred to as "Antibiotic, Full Body")</u>
On the "Full Body Antibiotic" product webpage of your website https://moorherbs.com:
• The product name: "Full Body Antibiotic" or "AntiBiotic, Full Body"
• "Our Moor Herbs 'High Science' AntiBiotic Formulae targets it all! Use it to help heal respiratory and sinus infections, bronchitis, pneumonia, strep throat, colds, flues [sic], colic, seizures, cough, diabetes, urinary problems, menstrual problems, fever, liver problems, constipation, vaginal discharge, smallpox, enlarged spleen, swelling, asthma, eye cataracts, depression, digestion problems, stomach ulcers, heart trouble, infections, migraine, stroke, pain, . . . as well as urinary tract, kidney, and bladder infections."
• "Also beneficial for women with yeast infections, trichonomosas, bacterial vaginosis, and chlamydia."
• "It can be helpful for people with chronic fatigue, HIV, cancer, herpes, and other chronic conditions related with depressed immunity."

<u>"Anti-Viral"</u>
On the "Anti-Viral" product webpage of your website https://moorherbs.com:
• The product name: "Anti-Viral"
• "Our Moor Herbs 'HIGH SCIENCE' Anti-Viral Formulae is a potent and effective herbal anti-viral conducive for countering all viral conditions."

<u>"Appendix Support"</u>
On the "Appendix Support" product webpage of your website https://moorherbs.com:
• "Our Moor Herbs High Science Appendix Support herbal blend is formulated to address the issues that lead to appendicitis: Constipation, Inflammation, and Infection."

<u>"Blood Pressure" (also referred to as "Blood Pressure Normalizer")</u>
On the "Blood Pressure" product webpage of your website https://moorherbs.com:
• The product name: "Blood Pressure Normalizer"
• "Our Moor Herbs 'HIGH SCIENCE' Blood Pressure Normalizor [sic] is supported by an Indian medicinal

Top ()

herb belonging to Caesalpiniaceae family of plants....What makes these seeds really popular, is their ability to lower blood pressure. Acting as a hypotensive agent, this humble seed works wonders for those looking to control their BP naturally."
• "It is a strong anti bacterial agent..."

<u>"Brain Tune-Up"</u>
On the "Brain Tune-Up" product webpage of your website https://moorherbs.com:
• "The 2 main ingredients in this blend are Gotu Kola and Ginko Biloba[.] Gotu Kola Leaf... is anti-inflammatory, antiviral, antibacterial, . . . and antifungal. In human studies, gotu kola . . . reduced symptoms of anxiety and depression. It has been used to treat brain-related disorders including mental fatigue, anxiety, depression, memory loss, and insomnia."
• "Protects the brain from damage"
• "Alleviates stress, anxiety, and depression"
• "Improves memory and mood in Alzheimer's patients"
• "Ginko Biloba has been repeatedly evaluated for its ability to reduce anxiety, stress and other symptoms associated with Alzheimer's disease ..."
• "Can Help Fight Inflammation."
• "Reduces Symptoms of Psychiatric Disorders and Dementia."
• "Can Reduce Anxiety."
• "Can Treat Depression."

<u>"Cardiovascular System"</u>
On the "Cardiovascular System" product webpage of your website https://moorherbs.com:
• "This 'High Science' Formula is designed to rebuild a degenerative heart..."

<u>"Headache & Pain Relief"</u>
On the "Headache & Pain Relief" product webpage of your website https://moorherbs.com:
• The product name: "Headache & Pain Relief"
• "Our Headache and Pain formula is a natural anodyne concoction that contains plants naturally rich in salicin that naturally breaks down into salicylic acid in the body that is anti-inflammatory in nature and thus effective where there is pain, which is a sensor that something is wrong on a deeper level."

<u>"Healthy Mommy Healthy Baby"</u>
On the "Healthy Mommy Healthy Baby" product webpage of your website https://moorherbs.com:
• "Note: This blend is also helpful for the following conditions: anemia, low blood, arthritis, asthma, hay fever, sinusitis, gout, emphysema, bronchitis, sinus relief, allergies, high blood pressure, nosebleeds, hemorrhaging, miscarriage (vitamin K), hardened arteries, tooth decay, peptic ulcers, duodenum ulcers, infections, drug and chemical toxins, skin problems, edema, water retention, bowels, gas pains..."

<u>"Quit Smoking"</u>
On the "Quit Smoking" product webpage of your website https://moorherbs.com:
• The product name: "Quit Smoking"
• "Our Moor Herbs 'High Science' Quit Smoking Formulae is a herbal compound of Nature's best herbs that have been utilized traditionally to help purify the bloodstream of pollutants and toxins, cleanse the liver...and develop a distaste of insidious addictive man- chemicals."

<u>"HyperThyroidism" (also referred to as "HyperThyroid Support")</u>
On the "HyperThyroidism" product webpage of your website https://moorherbs.com:

Top ()

• The product name: "HyperThyroidism" or "HyperThyroid Support"

• "For an overactive Thyroid"

• "Moor Herbs High Science HyperThyroidism Relief Formulae is designed for an over-active thyroid gland. Effective for calming down an overactive thyroid and reducing symptoms of hyperthyroidism such as agitation, restlessness, sweating and insomnia."

<u>"HypoThyroidism" (also referred to as "HypoThyroid Support")</u>

On the "HypoThyroidism" product webpage of your website https://moorherbs.com:

• The product name: "HypoThyroidism" or "HypoThyroid Support"

• "For an underactive Thyroid"

• "Moor Herbs High Science Thyroid Support Formula consists of Nature's plants high in organic iodine and which perform a myriad of beneficial functions for the thyroid gland including...normalizing the function of metabolism. An impaired thyroid gland can lead to a host of negative health problems so good thyroid health is imperative for overall good health."

<u>"Mucus Release"</u>

On the "Mucus Release" product webpage of your website https://moorherbs.com:

• "Mucus Release is a powerful 'High Science' formula that consists of effective expectorant herbs that help dissolve hardened, stubborn mucus and phlegm that obstruct the mucous membranes and lead to pathology throughout the body...Mucus Release is great for all mucus conditions!"

<u>"Parasite Cleanse"</u>

On the "Parasite Cleanse" product webpage of your website https://moorherbs.com:

• The product name: "Parasite Cleanse"

• "Parasite Cleanse 'High Science' Formula contain[s] some of Nature's best anthelmintic herbs that have been traditionally used for centuries by various cultures to remove parasites and worms from the tissues of the body. These creepy critters most certainly rob the body of nutrients and impair critical functions of the organs, glands, and systems of the body."

<u>"ResErection Extra Strength w/ Yohimbe Bark"</u>

On the "ResErection Extra Strength w/ Yohimbe Bark" product webpage of your website https://moorherbs.com:

• "Our Moor Herbs 'High Science' Resurrection formulae, is a 100% all-natural herbal-based formula for men experiencing difficulty with attaining and maintaining an erection (penile erectile dysfunction) with the root cause being poor circulation due to poor diet (and lifestyle) – a diet too high in animal protein (meat, flesh, cadavaer, carion, etc.) and animal fat which clogs the veins and arteries and thus impairing circulation which is vital for a healthy, solid, firm, and stiff erection."

<u>"Tumor Release" (also referred to as "Tumor & Cyst Support")</u>

On the "Tumor Release" product webpage of your website https://moorherbs.com:

• The product name: "Tumor Release" or "Tumor & Cyst Support"

• "Our Moor Herbs 'High Science' Tumor Release Formulae is a safe, sane and effective plant-based anti-neoplastic formulae that is helpful in natural, noninvasive, benign and malignant tumor dissolution."

• "The formula is useful for all tumor and cyst formations in the body, including uterine and ovarian cysts/tumors. Good for both internal and external tumors."

<u>"Un-Vax"</u>

On the "Un-Vax" product webpage of your website https://moorherbs.com:

^
Top ()

• "Our Moor Herbs 'HIGH SCIENCE' Herbal UN-VAX Formulae is an unique formula designed to remove heavy metal toxins from the body. It is an ideal Formulae to combat mercury (ethyl and methyl) toxicity and aluminum toxicity, both of which are known to cause a plethora of adverse health conditions, especially in children."

<u>"Venereal Defense"</u>
On the "Venereal Defense" product webpage of your website https://moorherbs.com:
• The product name: "Venereal Defense"
• "Our Moor Herbs High Science Venereal Defense Formulae helps foment natural healing of adverse conditions that are passed on from one person to another through intimate contact."

<u>"Womb Care Cramp Relief & Fibroid Release" (also referred to as "Womb Care: Fibroid and Tumor Release")</u>
On the "Womb Care Cramp Relief & Fibroid Release" product webpage of your website https://moorherbs.com:
• The product name: "Womb Care Cramp Relief & Fibroid Release" or "Womb Care: Fibroid and Tumor Release"
• "Our Moor Herbs 'High Science' Fibroid/Tumor Release Formulae is an all-natural herbal formulation consisting of Nature's herbs that have an affinity for the female uterus, e.g. Chaste berry and Dong Quai and that are also anti-neoplastic (anti-tumor growth and formation) in nature, e.g. Burdock and Comfrey, thus combating tumorous growth on the uterus, e.g. fibroid tumors or uterine fibroids, facilitating dissolution via the vaginal canal and other eliminative channels."
• "Fibroids/Tumor Release, is a product that can be used in an overall regimen to help females naturally dissolve tumors of the reproductive system and is a great post Womb Cleanse formulae to consume daily."
• "Recommended for: Uterine fibroids or fibroid tumors, cervical tumors, uterine cysts."

<u>"Lungs & Respiratory"</u>
On the "Lungs & Respiratory" product webpage of your website https://moorherbs.com:

• "This High Science Formula is a highly effective anti-tussive and expectorant science formulae."

Your products are not generally recognized as safe and effective for the above referenced uses and, therefore, these products are "new drugs" under section 201(p) of the FD&C Act [21 U.S.C. 321(p)].

With certain exceptions not applicable here, new drugs may not be legally introduced or delivered for introduction into interstate commerce without prior approval from FDA, as described in sections 301(d) and 505(a) of the FD&C Act [21 U.S.C. 331(d) and 355(a)]. FDA approves a new drug on the basis of scientific data and information demonstrating that the drug is safe and effective.

A drug is misbranded under section 502(f)(1) of the FD&C Act [21 U.S.C. 352(f)(1)] if the drug fails to bear adequate directions for its intended use(s). "Adequate directions for use" means directions under which a layperson can use a drug safely and for the purposes for which it is intended (21 CFR 201.5). Prescription drugs, as defined in section 503(b)(1)(A) of the FD&C Act [21 U.S.C. 353(b)(1)(A)], can only be used safely at the direction, and under the supervision, of a licensed practitioner.

Your "Full Body Antibiotic" (also referred to as "Antibiotic, Full Body"), "Anti-Viral," "Blood Pressure" (also referred to as "Blood Pressure Normalizer"), "Brain Tune-Up," "Healthy Mommy Healthy Baby," "HyperThyroidism" (also referred to as "HyperThyroid Support"), "HypoThroidism" (also referred to as "HypoThyroid Support"), "ResErection Extra Strength w/Yohimbe Bark," "Tumor Release" (also referred to as "Tumor & Cyst Support"), "Venereal Defense," and "Womb Care Cramp Relief & Fibroid Release" (also referred

to as "Womb Care: Fibroid and Tumor Release") products are intended for treatment of one or more diseases that are not amenable to self-diagnosis or treatment without the supervision of a licensed practitioner. Therefore, it is impossible to write adequate directions for a layperson to use these products safely for their intended purposes. Accordingly, your "Full Body Antibiotic" (also referred to as "Antibiotic, Full Body"), "Anti-Viral," "Blood Pressure" (also referred to as "Blood Pressure Normalizer"), "Brain Tune-Up," "Healthy Mommy Healthy Baby," "HyperThyroidism" (also referred to as "HyperThyroid Support"), "HypoThroidism" (also referred to as "HypoThyroid Support"), "ResErection Extra Strength w/Yohimbe Bark," "Tumor Release" (also referred to as "Tumor & Cyst Support"), "Venereal Defense," and "Womb Care Cramp Relief & Fibroid Release" (also referred to as "Womb Care: Fibroid and Tumor Release") products fail to bear adequate directions for their intended use and, therefore, the products are misbranded under section 502(f)(1) of the FD&C Act [21 U.S.C. 352(f)(1)]. The introduction or delivery for introduction into interstate commerce of these misbranded drugs violates section 301(a) of the FD&C Act [21 U.S.C. 331(a)].

## Adulterated Dietary Supplements

The dietary supplements manufactured at your facility are adulterated under section 402(g)(1) of the FD&C Act [21 U.S.C. 342(g)(1)] because they have been prepared, packed, or held under conditions that do not meet the Current Good Manufacturing Practice (CGMP) regulation for dietary supplements (21 CFR Part 111). During the inspection of your facility, FDA investigators observed the following significant violations of the CGMP regulation for dietary supplements:

1. You failed to establish the specifications required under 21 CFR 111.70. Specifically:

a. You failed to establish the following required component specifications under 21 CFR 111.70(b) for each component that you use in the manufacture of a dietary supplement: (1) identity specifications, as required by 21 CFR 111.70(b)(1); and (2) component specifications that are necessary to ensure that specifications for the purity, strength, and composition of the dietary supplements manufactured using the components are met, as required by 21 CFR 111.70(b)(2). Specifically, when our investigators requested such component specifications for the Coltsfoot, Wild Cherry Bark, and Boneset Herb ingredients used in the manufacturing of your "Lungs & Respiratory" finished dietary supplement product, you were unable to provide such component specifications. We have reviewed your written response on April 3, 2023, in which you state that you "are in the process of establishing component specifications for identity, purity, strength and composition of the finished dietary supplement." We cannot evaluate the adequacy of your corrective action, because you did not provide any additional evidence or supporting documentation for review.

b. You failed to establish specifications for dietary supplement labels (labeling specifications), as required by 21 CFR 111.70(d). Specifically, you were unable to provide labeling specifications for your "Anti-Viral," "Full Body Antibiotic" (also referred to as "Antibiotic, Full Body"), and "Lungs & Respiratory" finished dietary supplement products when requested by our investigators. We have reviewed your written response on April 3, 2023, in which you state that you are in the process of establishing written labeling specifications. We cannot evaluate the adequacy of your corrective action, because you did not provide any additional evidence or supporting documentation for review.

c. You failed to establish specifications for each dietary supplement that you manufacture for the identity, purity, strength, and composition of the finished batch of the dietary supplement, and for limits on those types of contamination that may adulterate, or that may lead to adulteration of, the finished batch of the dietary supplement to ensure the quality of the dietary supplement, as required by 21 CFR 111.70(e). Specifically, you were unable to provide finished product specifications for your "Anti-Viral," "Full Body Antibiotic" (also

referred to as "Antibiotic, Full Body"), and "Lungs & Respiratory" finished dietary supplement products when requested by our investigators. We have reviewed your written response on April 3, 2023, in which you state that you "are in the process of establishing product specifications for identity, purity, strength and composition of the finished dietary supplement." We cannot evaluate the adequacy of your corrective action, because you did not provide any additional evidence or supporting documentation for review.

We note that once you have established these specifications, you must determine whether the specifications that you establish under 21 CFR 111.70 are met, as required by 21 CFR 111.73 and 21 CFR 111.75(c). Specifically, once you have established component specifications and before using a component, you must conduct at least one appropriate test or examination to verify the identity of any component that is a dietary ingredient, as required by 21 CFR 111.75(a)(1)(i), unless you petition the agency under 21 CFR 111.75(a)(1)(ii) and the agency exempts you from such testing. You must also confirm the identity of other components and determine whether other applicable component specifications established in accordance with 21 CFR 111.70(b) are met, as required by 21 CFR 111.75(a)(2). Further, you must verify that your finished batch of the dietary supplement meets product specifications for the identity, purity, strength, composition, and for limits on those types of contamination that may adulterate or that lead to adulteration of the finished batch of the dietary supplement, as required by 21 CFR 111.75(c).

You must also make and keep records, including records for the specifications you establish, in accordance with 21 CFR 111.95.

2. You failed to establish and follow written procedures for the responsibilities of the quality control operations, including written procedures for conducting a material review and making a disposition decision, and for approving or rejecting any reprocessing, as required by 21 CFR 111.103, and make and keep records of such procedures, as required by 21 CFR 111.140(b)(1). Specifically, you told our investigators that you have no written procedures for quality control operations and that you do not have a quality control program in place.

We have reviewed your written response received on April 3, 2023, in which you state that you "are in the process of implementing quality control operations to ensure the quality of dietary supplements" and "are also in the process of establishing written procedures and training quality control personnel to ensure all is produced safely, accurately, and according to the standards we have, and are putting, in place." We cannot evaluate the adequacy of your corrective action, because you did not provide any additional evidence or supporting documentation for review.

3. You did not prepare and follow a master manufacturing record (MMR) for each unique formulation of dietary supplement that you manufacture, and for each batch size, to ensure uniformity in the finished batch from batch to batch, as required by 21 CFR 111.205(a). Upon request, you could not provide written MMRs for your "Anti-Viral," "Full Body Antibiotic" (also referred to as "Antibiotic, Full Body"), and "Lungs & Respiratory" finished dietary supplement products to our investigators. You stated that you did not have these records, and none were provided.

We have reviewed your written response received on April 3, 2023, in which you state that you "are in the process of establishing Master Manufacturing Records for each dietary supplement and size." We cannot evaluate the adequacy of your corrective action, because you did not provide any additional evidence or supporting documentation for review.

4. Your batch production record did not include complete information relating to the production and control of each batch, as required under 21 CFR 111.255(b) and 21 CFR 111.260. Specifically, batch production records for "Anti-Viral" manufactured on **(b)(4)** with lot #**(b)(4)**, "Full Body Antibiotic" (also referred to as "Antibiotic,

Full Body") manufactured on **(b)(4)** with lot #**(b)(4)**, and "Lungs & Respiratory" manufactured on **(b)(4)** with lot #**(b)(4)**, were collected and reviewed. These records do not include complete information required to be in batch production records. The required information that your records are missing includes, but is not limited to, the following:

• The identity of equipment and processing lines used in producing the batch [21 CFR 111.260(b)];

• The date and time of the maintenance, cleaning, and sanitizing of the equipment and processing lines used in producing the batch, or a cross-reference to records where this information is retained [21 CFR 111.260(c)];

The unique identifier that you assigned to each component, packaging, and label used [21 CFR 111.260(d)];

• A statement of the actual yield and a statement of the percentage of theoretical yield at appropriate phases of processing [21 CFR 111.260(f)];

• The actual results obtained during any monitoring operation [21 CFR 111.260(g)];

• The results of any testing or examination performed during the batch production, or a cross-reference to such results [21 CFR 111.260(h)];

• Documentation at the time of performance of the manufacture of the batch, including [21 CFR 111.260(j)]:

o The date on which each step of the MMR was performed [21 CFR 111.260(j)(1)]; and

o The initials of the persons performing each step [21 CFR 111.260(j)(2)], including:

⊞ The initials of the person responsible for weighing or measuring each component used in the batch;

⊞ The initials of the person responsible for verifying the weight or measure of each component used in the batch;

⊞ The initials of the person responsible for adding the component to the batch; and

⊞ The initials of the person responsible for verifying the addition of components to the batch;

• Documentation at the time of performance of packaging and labeling operations [21 CFR 111.260(k)], including:

o The unique identifier that you assigned to packaging and labels used, the quantity of the packaging and labels used, and, when label reconciliation is required, reconciliation of any discrepancies between issuance and use of labels [21 CFR 111.260(k)(1)];

o An actual or representative label, or a cross-reference to the physical location of the actual or representative label specified in the MMR [21 CFR 111.260(k)(2)]; and

o The results of any tests or examinations conducted on packaged and labeled dietary supplements (including repackaged or relabeled dietary supplements), or a cross-reference to the physical location of such results [21 CFR 111.260(k)(3)];

• Documentation at the time of performance that quality control personnel [21 CFR 111.260(l)]:

o Reviewed the batch production record [21 CFR 111.260(l)(1)], including:

⊞ Review of any monitoring operation required under subpart E of 21 CFR part 111 [21 CFR 111.260(l)(i)]; and

⊞ Review of the results of any tests and examinations, including tests and examinations conducted on components, in-process materials, finished batches of dietary supplements, and packaged and labeled dietary supplements [21 CFR 111.260(l)(ii)];

o Approved or rejected any reprocessing or repackaging [21 CFR 111.260(l)(2)]; and

o Approved and released, or rejected, the batch for distribution, including any reprocessed batch [21 CFR 111.260(l)(3)]; and

o Approved and released, or rejected, the packaged and labeled dietary supplement, including any repackaged or relabeled dietary supplement [21 CFR 111.260(l)(4)].

• Documentation at the time of performance of any required material review and disposition decision [21 CFR 111.260(m)];

• Documentation at the time of performance of any reprocessing [21 CFR 111.260(n)].

⌃ Top ()

We have reviewed your written response received on April 3, 2023, in which you state that you "are still in the process of establishing and implementing the systems (as discussed throughout this document and the investigators observations) that will allow us to produce complete batch records." We cannot evaluate the adequacy of your corrective action, because you did not provide any additional evidence or supporting documentation for review.

5. You failed to establish and follow written procedures for the requirements to review and investigate a product complaint, as required under 21 CFR 111.553. Specifically, our investigators requested your written procedures to review and investigate a product complaint. You stated that you did not have this procedure, and you did not provide it.

We have reviewed your April 3, 2023, written response, in which you state, "We've been operating since March of 2015 and have never received a complaint. However, we are in the process of establishing written procedures for reviewing and investigating product/customer complaints." We cannot evaluate the adequacy of your corrective action, because you did not provide any additional evidence or supporting documentation for review.

6. You failed to establish and follow written procedures for when a returned dietary supplement is received, as required under 21 CFR 111.503. Specifically, our investigators requested your written procedures for when a returned dietary supplement is received. You stated that you did not have these written procedures, and none were provided.

We have reviewed your April 3, 2023, written response, in which you state that you "are in the process of establishing written procedures for when a returned dietary supplement is received." We cannot evaluate the adequacy of your corrective action, because you did not provide any additional evidence or supporting documentation for review.

7. You failed to establish and follow written procedures for holding and distributing operations, as required by 21 CFR 111.453. Specifically, during the inspection, you said you had not established written procedures for holding and distributing operations.

Once have you established written procedures for your holding and distributing operations, you must make and keep records of such written procedures, as required by 21 CFR 111.475(b)(1).

We have reviewed your April 3, 2023, written response, in which you state that you "are in the process of establishing written procedures for holding and distributing operations." We cannot evaluate the adequacy of your corrective action, because you did not provide any additional evidence or supporting documentation for review.

8. You did not maintain and clean equipment, utensils, and contact surfaces used to manufacture, package, label, or hold components or dietary supplements, as required under 21 CFR 111.27(d). P

Specifically, on **(b)(4)**, during the manufacturing of your "Lungs & Respiratory" finished dietary supplement product, your multi-functional grinder was observed with a light green and brown residue inside the bowl and the **(b)(4)** plastic capsule filling equipment was observed with a light brown powder and brown staining. Furthermore, the method you used for cleaning and sanitizing your utensils and equipment does not align with, and directly contradicts, the manufacturer's written instructions on the cleaning and sanitizing products. Additionally, you do not have any written procedures for cleaning or sanitizing your utensils and equipment, as required under 21 CFR 111.25(c).

Top ()

We have reviewed your April 3, 2023, written response, in which you state that you "have since corrected the

way we wash and sanitize our utensils and equipment, according to the instructions indicated on the cleaning agents we use, combined with regulations outlined under Michigan Food Law." These corrections will be evaluated during the next FDA inspection of your firm. You also stated in your response that you "are in the process of establishing written procedures for cleaning and sanitizing utensils and equipment." We cannot evaluate the adequacy of your corrective action, because you did not provide any additional evidence or supporting documentation for review.

**Misbranded Dietary Supplements**

In addition, your "Lungs and Respiratory," <u>"Full Body Antibiotic" (also referred to as "Antibiotic, Full Body")</u>, "Antiviral," "Blood Pressure" (also referred to as "Blood Pressure Normalizer"),, "Headache & Pain Relief," and "Bright Eyes" products are misbranded dietary supplements under Section 403 of the Act [21 U.S.C. § 343] because they do not comply with the labeling requirements for dietary supplements as required by 21 CFR 101 as follows:

1. Your "Lungs and Respiratory," <u>"Full Body Antibiotic" (also referred to as "Antibiotic, Full Body")</u>, "Antiviral," "Blood Pressure" (also referred to as "Blood Pressure Normalizer"), "Headache & Pain Relief," and "Bright Eyes" products are misbranded within the meaning of section 403(q)(1)(A) of the Act [21 U.S.C. § 343(q)(1)(A)] because the serving size declared on the labels is are incorrect. Serving size for a dietary supplement is the maximum amount consumed per eating occasion as recommended on the product label as defined in 21 CFR 101.9(b) and 21 CFR 101.12(b) Table 2. Your Lungs and Respiratory, Full Body Antibiotic, Antiviral, Blood Pressure Normalizer, Headache & Pain Relief, and Bright Eyes product labels' serving sizes is declared as "3 Capsules or 3 Scoops" and are not specific to each product.

2. Your "Lungs and Respiratory," <u>"Full Body Antibiotic" (also referred to as "Antibiotic, Full Body")</u>, "Antiviral," "Blood Pressure" (also referred to as "Blood Pressure Normalizer"), "Headache & Pain Relief," and "Bright Eyes" products are misbranded within the meaning of sections 403(q)(5)(F) of the Act [21 U.S.C. § 343(q)(5)(F)] in that the presentation of nutrition information on the labeling of the products does not comply with 21 CFR 101.36. Specifically,
• The title "Supplement Facts" is not set at full width of the nutrition label, in accordance with 21 CFR 101.36(e)(1).
• The dietary ingredients are not indented under the title "Proprietary Herbal Blend", in accordance with 21 CFR 101.36(c)(2).
• The quantitative amount by weight per serving of proprietary blend does not use metric measures in appropriate units (i.e., 1000 units must be declared in the next higher set of units, e.g., 10000 mg must be expressed as 10 g), in accordance with 21 CFR 101.36(b)(3)(ii)(A).

3. Your Lungs and Respiratory," <u>"Full Body Antibiotic" (also referred to as "Antibiotic, Full Body")</u>,, "Headache & Pain Relief," and "Blood Pressure" (also referred to as "Blood Pressure Normalizer") products are misbranded within the meaning of section 403(s)(2)(C) of the Act [U.S.C. § 343(s)(2)(C)] in that the label fails to identify the part of the plant (e.g., root, leaves) from which each botanical dietary ingredient in the product is derived, as required by 21 CFR 101.4(h)(1) and 101.36(d)(1). If the whole or entire part is used, this must be declared.

4. Your "Blood Pressure" (also referred to as "Blood Pressure Normalizer") and "Headache & Pain Relief" products are misbranded within the meaning of section 403(i)(2) of the Act in that the labels fail to declare all the common or usual names of each ingredient used as required by 21 CFR 101.36 and 21 CFR 101.4(h). For example:

Top ()

• The Blood Pressure Normalizer product label lists "manjishtha", but this is not the standardized common name of the dietary ingredient. The label must list the standardized common name (SCN) given in the reference Herbs of Commerce, "Indian madder". The Ayurvedic name for Indian madder (manjishtha) may follow the SCN in parentheses.

• The SCN for the term "Chaksu" must be declared; in the absence of a SCN, the Latin binomial name must be declared.

• The Headache & Pain Relief product declares "dashmoola". The dietary ingredient(s) that make up the "dashmoola" must be declared by the SCN; in the absence of a SCN, the Latin binomial name for the dietary ingredient must be declared.

5. Your "Lungs and Respiratory," <u>"Full Body Antibiotic" (also referred to as "Antibiotic, Full Body")</u>, "Antiviral," "Blood Pressure" (also referred to as "Blood Pressure Normalizer"), "Headache & Pain Relief," and "Bright Eyes" products are misbranded within the meaning of section 403(i)(2) [21 U.S.C. § 343(i)(2)] of the Act because the labels fail to declare all ingredients, as required by 21 CFR 101.4. Specifically, the products fail to declare the ingredients of the capsule material.

## Conclusion

This letter is not intended to be an all-inclusive statement of violations that may exist in connection with your products. You are responsible for investigating and determining the causes of any violations and for preventing their recurrence or the occurrence of other violations. It is your responsibility to ensure that your firm complies with all requirements of federal law, including FDA regulations.

This letter notifies you of our concerns and provides you an opportunity to address them. Failure to adequately address this matter may result in legal action including, without limitation, seizure and injunction.

Please notify FDA in writing, within 15 working days of receipt of this letter, of the specific steps you have taken to address any violations. Include an explanation of each step being taken to prevent the recurrence of violations, as well as copies of related documentation. If you cannot complete corrective actions within 15 working days, state the reason for the delay and the time within which you will do so. If you believe that your products are not in violation of the FD&C Act, include your reasoning and any supporting information for our consideration.

We offer the following additional comments:

1. Your "Lungs and Respiratory," <u>"Full Body Antibiotic" (also referred to as "Antibiotic, Full Body")</u>, "Antiviral," "Blood Pressure" (also referred to as "Blood Pressure Normalizer"), "Headache & Pain Relief," and "Bright Eyes" product labels do not bear a symbol next to the structure/function claim linking the claim to the disclaimer. Furthermore, the disclaimer fails to be enclosed in a box, in accordance with 21 CFR 101.93(d).

Your response should be sent to the U.S. Food and Drug Administration; Attn: Katie Cutajar, Compliance Officer, via email at ORAHAFEAST6FirmResponses@fda.hhs.gov, or at 300 River Place Suite 5900, Detroit, MI 48207. If you have questions regarding this letter, please contact CO Cutajar at (313) 680-6962 or via email at Kathryn.Cutajar@fda.hhs.gov.

Sincerely,
/S/

William R. Weissinger, MS
Program Division Director

Top ()

Office of Human and Animal Food Operations

East Division 6

⊖ More Warning Letters (/inspections-compliance-enforcement-and-criminal-investigations/compliance-actions-and-activities/warning-letters)